UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

KENNETH E. SALAMONE and
RUFSTR RACING, LLC

                Plaintiffs,

v.

DOUGLAS MARINE CORPORATION

                Defendant.

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

Case No. 1:19-CV-1213 (MAD/DJS)

---

## COMPLAINT

Plaintiffs, Kenneth E. Salamone and RUFSTR Racing, LLC, by and through their attorneys, Deily & Glastetter, LLP, as and for their Complaint against Defendant, Douglas Marine Corporation, alleges as follows:

## PARTIES

1.     Plaintiff, Kenneth E. Salamone (hereinafter "Salamone"), is an individual residing at 240 Park Avenue, New York, New York 10003. Salamone has owned property in the Northern District of New York since 2003 and has been a New York State resident since August 2015.

2.     At all times relevant herein, Salamone was an active participant on the Class 5 Offshore Power Boat Association race circuit, winning races throughout 2013- 2018.

3.     Plaintiff, RUFSTR Racing, LLC (hereinafter "RUFSTR"), is a single member Delaware Limited Liability Company. Salamone is the sole member of RUFSTR.

4.     Salamone and RUFSTR are collectively referred to as "Plaintiffs".

5.    Upon information and belief, Defendant, Douglas Marine Corporation (hereinafter "DMC"), is a foreign Michigan Corporation with its offices and principal place of business located at 6780 Enterprise Drive, Douglas, Michigan 49406.

6.    DMC manufactures Skater Power Boats at its Michigan facility.

7.    DMC advertises its boats for sale in the State of New York.

8.    DMC transacts business in the State of New York.

9.    DMC has dealerships in the State of New York authorized to sell DMC's products including Skater Power Boats, to consumers in the State of New York.

10.    DMC conducts interstate commerce throughout the United States.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction to entertain this action pursuant to 28 U.S.C. § 1332. The amount of controversy exceeds Seventy-Five Thousand and 00/100 ($75,000.00) Dollars, exclusive of interest and costs, and there is complete diversity among the parties.

12.    Venue is proper in the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 1391(a)(2) as the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## FACTUAL ALLEGATIONS

13.    On or about December 31, 2015, Plaintiffs entered into a Contract of Sale ("2015 Contract") with DMC for the purchase of a new Skater 388 Race Boat and trailer (the "Skater").

14.    In entering the 2015 Contract, Plaintiffs intended for and DMC agreed to construct, the Skater to compete in the World Championship Weekend Races in Englewood, Florida in 2016.

15.     With the agreed goal in mind, DMC agreed to construct the Skater with plenty of time to rig the boat and in time to allow Plaintiffs thirty (30) days prior to the Championship race to test the Skater.

16.     Delivery of the Skater was therefore promised by DMC to Plaintiffs by August of 2016.

17.     In addition to the Championship race, delivery by DMC of the Skater by August 2016 would have allowed Plaintiffs to use the Skater for the entire 2017 race season.

18.     The 2015 Contract set forth a payment schedule wherein Plaintiffs agreed to make a first payment deposit of $180,705.66; and thereafter a second payment in the amount of $180,705.66 due upon completion of the hull and deck; and a third payment of $180,705.66 due upon completion of the Skater.

19.     On or about December 31, 2015, Plaintiffs made an initial deposit payment of $300,000.00 to DMC for the construction of the Skater.

20.     The Skater was not completed by August of 2016 as originally agreed.

21.     Due to the continuous delays by DMC in constructing the Skater, Plaintiffs were therefore unable to use the Skater in the Championship race and the 2016-2017 race season.

22.     In December of 2016, DMC presented Plaintiffs with a Contract of Sale ("2016 Contract") that is nearly identical to the 2015 Contract.

23.     The 2016 Contract has the same payment schedule as the 2015 Contract.

24.     Despite the continuous delays by DMC on the Skater's construction, and despite the Skater's hull and deck having not been completed, on or about December 30, 2016, Plaintiffs tendered the remainder of the $61,500, due as the second installment under the 2015 and 2016 Contract.

25.     Given the delays in construction of the Skater up to this point, Plaintiffs engaged DMC concerning the status and anticipated completion of the Skater.

26.     Based upon repeated conversations with DMC, Plaintiffs were assured the Skater was nearing completion.

27.     Relying on the representations of DMC that the Skater was nearing completion, Plaintiffs placed an order with DMC for "Mercury Racing Engines", transom assembly and Super Speed Master Drives (the "Mercury Engines" and "Drives").

28.     The Mercury Engines and Drives were necessary to intentionally complete the Skater after construction of the hull and deck was complete.

29.     Plaintiffs paid DMC $140,000.00 for the Mercury Engines and Drives on or about March 2, 2017.

30.     Thereafter, the Mercury Engines and Drives were delivered to DMC.

31.     Despite Plaintiffs demands, DMC never turned over possession of the Mercury Engines or Drives to Plaintiffs.

32.     Throughout the end of 2016 and beginning of 2017, DMC made repeated representations to Plaintiffs, both orally and in writing, about construction of the Skater nearing completion.

33.     DMC's representations were false, as evidenced by photographs of the boat taken inside DMC's factory during the time of the representations were made.

34.     After repeated delays, broken delivery promises and two missed racing seasons, Plaintiffs advised DMC verbally and subsequently tendered a rejection letter to DMC on or about June 2017. A copy of the June 2017 letter to DMC is annexed hereto as **Exhibit "A".**

35.     DMC's failure to complete and deliver the Skater to Plaintiffs within the time agreed constitutes a breach of the 2015 Contract and 2016 Contract.

36.     On or about July 5, 2017, Peter C. Hledin of DMC acknowledged its breach of the 2015 Contract and 2016 Contract and acknowledged that the completion delivery of the boat was late.

37.     The delay in production cost sponsorship opportunities for Plaintiff RUFSTR, which is the Company name and brand under which Salamone races.

38.     Subsequent to, and without waiving any of Plaintiffs' rights with respect to DMC's breach of the 2015 and 2016 Contract, Plaintiffs agreed to allow DMC to sell the Skater, in a commercially reasonable manner, in an effort to minimize Plaintiffs' damages.

39.     Additionally, DMC agreed to refund the deposit payments made on the Skater to Plaintiffs.

40.     The parties' separate agreement was memorialized.

41.     On or about July 5, 2017, DMC confirmed in writing the separate agreement to market and sell the Skater to a third party.

42.     The separate agreement pertained only to the Skater, it did not include the Mercury Engines and Drives.

43.     Pursuant to the separate agreement, DMC listed the Skater for sale at the DMC location and on several powerboat websites.

44.     Throughout the summer and fall of 2017, there was continuous verbal and written contact by Plaintiffs to DMC to determine the status of the agreed upon sale procedure for the Skater.

45.    On or about March 1, 2018, Plaintiffs again made a demand for the return of the Mercury Engines and Drives.

46.    Without any further discussion or objection to the agreed upon separate agreement to sell the Skater, on or about November 8, 2017 Plaintiffs received a confusing letter from DMC's counsel purporting to tender the rejected Skater to Plaintiffs. See **Exhibit "B"**.

47.    At the time of tender, the Skater was neither complete nor timely delivered pursuant to the parties express intentions and the 2015 Contact and 2016 Contract. In fact the Skater was never tendered at all.

48.    Plaintiffs thereafter again rejected the purported tender of the Skater.

49.    On or about Thursday, May 3, 2018, Plaintiffs flew to Grand Rapids, Michigan and traveled to DMC specifically to meet with DMC concerning the separate agreement to market and sell the Skater.

50.    Thereafter, without explanation or accounting, DMC issued a refund to Plaintiffs in the amount of $50,000.

51.    Thereafter, Plaintiffs continued to contact DMC by telephone and text to determine the plan for the sale of the Skater but never received any response from DMC.

52.    Throughout 2018 and 2019, Plaintiffs texted and called Anthony Cutsuries of DMC demanding an accounting of the Skater, a refund of any proceeds, and a return of the Mercury Engines and Drives.

53.    In or about August 2019, Plaintiffs located the Skater on a website displaying photographs of an organized exhibition of Skater boats, known as "Skaterfest".

54.    Upon information and belief, DMC sold the Skater to a third party.

55.     The Instagram account belonging to the third-party began posting pictures of the Skater in or about December 2018, indicating that the Skater was "finally finished".

56.     Upon information and belief, the Skater in the photos on the Instagram account belonging to the third-party is Plaintiffs' Skater.

57.     Upon information and belief, DMC re-fitted another Skater boat with the mercury Engines and Drives belonging to Plaintiffs without their consent.

58.     Plaintiffs have learned that DMC routinely fails to timely deliver boats to consumers as promised.

59.     Except for the $50,000.00 refund, DMC has not returned any of the other payments made by Plaintiffs to DMC.

60.     DMC has not returned the Mercury Engines and Drives.

61.     DMC never had any ownership interest in Salamone's Mercury Engines and Drives.

62.     Upon information and belief, DMC has converted the Mercury Engines and Drives.

63.     Upon information and belief, DMC has sold the Mercury Engines and Drives and retained the sale proceeds.

## FIRST CAUSE OF ACTION- DECEPTIVE BUSINESS PRACTICES

64.     Plaintiffs repeat reiterate and reallege each and every allegation contained in paragraph "1" through "63" as if set forth in full herein.

65.      DMC designs, manufactures, markets and sells boats and boat related products directly to consumers.

66.     DMC engages in consumer oriented conduct.

67.     As detailed herein, DMC engaged in various conduct that was materially deceptive, including:

      a.     DMC entered into the original 2015 Contract to construct and deliver the Skater to Plaintiffs by August of 2016.  This representation was materially false and deceptive as DMC did not and, upon information and belief, could not intend to complete and deliver the Skater by August of 2016.

      b.     After delays on construction and delivery of the Skater resulted in the 2016 Contract, Plaintiffs engaged DMC numerous times concerning the construction progress.  DMC responded on those numerous occasions that the Skater was nearing completion, which was materially misleading and false.

      c.     DMC materially misled Plaintiffs to enter into the subsequent agreement to sell the Skater to a third-party under the terms and conditions agreed to without any intention of complying with the agreed terms.

68.     Plaintiffs have learned that DMC has directed similar false and materially misleading conduct to other consumers, and particularly with respect to the timely construction and delivery of its boats.

69.     DMC's materially misleading conduct caused Plaintiffs substantial injury, including the deposits made under the 2015 Contract and 2016 Contract, conversion of the Mercury Engines and Drives, and the irreparable harm of not having the Skater for racing for the promised season.

70.     Based on the foregoing, DMC has engaged in deceptive business practices that resulted in substantial injury to Plaintiffs in violation of Gen. Bus. Law § 349.

71.     Plaintiffs are entitled to treble damages.

72.     Plaintiffs are entitled to recover all attorneys' fees expended as a result of DMC's deceptive business practices.

## SECOND CAUSE OF ACTION- BREACH OF CONTRACT

73.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "72" as if set forth in full herein.

74.     Plaintiffs entered into the 2015 Contract and the 2016 Contract to purchase the Skater.

75.     Pursuant to the terms of the 2015 Contract and 2016 Contract, Plaintiff agreed to make certain payments for the purchase of the Skater.

76.     Upon completion of the Skater, DMC was required to deliver the Skater and Plaintiffs were required to make the final installment payment.

77.     It was agreed, understood, and intended that the Skater would be completed in time to be used for the 2017 race season.

78.     Plaintiffs made all payments to DMC required under the 2015 Contract and 2016 Contract.

79.     DMC did not complete and did not deliver the Skater to Plaintiffs.

80.     As a result of DMC's breach of the 2015 Contract and 2016 Contract Plaintiffs have been injured in the amount of $501,500.00.

## THIRD CAUSE OF ACTION- UNJUST ENRICHMENT

81.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "80" as if set forth in full herein.

82.    DMC requested from and caused Plaintiffs to pay sums to begin and complete construction of the Skater.

83.    In furtherance of DMC's representations that the Skater was nearing completion, DMC caused Plaintiffs to purchase the Mercury Engines and Drives

84.    The Mercury Engines and Drives were purchased by Plaintiffs but delivered to DMC.

85.    DMC never completed and delivered the Skater to Plaintiffs and did not sell the Skater and remit the agreed upon funds to Plaintiffs.

86.    DMC has not returned to Plaintiffs the entirety of the funds advanced by Plaintiffs for the Skater.

87.    DMC has not returned to Plaintiffs the Mercury Engines and Drives or their purchase price.

88.    By accepting the funds and the Mercury Engines and drives without delivering the Skater, DMC has been unjustly enriched.

89.    As a result, Plaintiffs are entitled to recovery of $501,500.00, plus interest, on the grounds of unjust enrichment.

## FOURTH CAUSE OF ACTION- FRAUD

90.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "89" as if set forth in full herein.

91.    DMC made false representations of material fact to Plaintiffs.

92.    Specifically, DMC made numerous materially false representations to Plaintiffs that the Skater was nearing completion and was in fact going to be completed.

93.     DMC also made materially false representations that it would sell the Skater to a third-party and return agreed upon sums paid by Plaintiffs to the Plaintiffs.

94.     DMC made the referenced false representations in the following manner and on at least the following dates:  June 27, 2017 letter from DMC; July 5, 2017 letter from DMC; dozens of text messages between Plaintiffs and Defendant throughout 2017, 2018, and 2019.

95.     At all relevant times, DMC knew the falsity of, or recklessly disregarded the truth or falsity of, their false representations of material fact to Plaintiffs.

96.     At all relevant times, DMC's false representations were made to induce Plaintiffs to pay additional advances due under the 2015 Contract and 2016 Contract; to purchase the Mercury Engines and Drives for the Skater; and to leave the Skater with DMC for marketing and sale.

97.     DMC did not complete and deliver the Skater to Plaintiffs.

98.     DMC eventually sold the Skater but continued to represent to Plaintiffs that it had not sold the Skater.

99.     DMC's sale of the Skater itself was contrary to its material representations to Plaintiffs.

100.    Plaintiffs justifiably relied on DMC's numerous misrepresentations, which included making advances due under the 2015 Contract and 2016 Contract and purchasing the Mercury Engines and Drives for the Skater.

101.    DMC has kept Plaintiffs' payments for the Skater and also the funds from selling the Skater to a third-party.

102.    DMC kept Plaintiffs' Mercury Engines and Drives and the funds from converting the Mercury Engines and Drives to a third-party purchaser.

103.    Plaintiffs have been damaged by DMC's false and materially misleading representations.

104.    As a result Plaintiffs are entitled to recovery from DMC for its fraud.

## FIFTH CAUSE OF ACTION-CONVERSION

105.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "104" as if set forth in full herein.

106.    Plaintiffs paid the amounts set forth in the 2015 Contract and 2016 Contract for the Skater.

107.    The Skater is Plaintiffs' personal property.

108.    The Mercury Engines and Drives were purchased by Plaintiffs.

109.    The Mercury Engines and Drives are Plaintiffs' personal property.

110.    At all times relevant herein, DMC had possession, custody and control of the Skater and Mercury Engines and Drives.

111.    Plaintiffs have demanded delivery of the funds paid by Plaintiffs and derived from the Skater's sale to a third-party but DMC has failed and refused to return possession to Plaintiffs.

112.    Plaintiffs have demanded return of the Mercury Engines and Drives or the funds derived from their sale to a third-party but DMC has failed and refused to return possession to Plaintiffs.

113.    As a result, DMC has converted the Skater, Plaintiffs' funds and the Mercury Engines and Drives for its benefit and to the detriment of Plaintiffs.

114.    Upon information and belief, DMC's conversion of the Skater, Plaintiffs' funds and the Mercury Engines and Drives was willful, malicious and with the intent to injure Plaintiffs and with wanton disregard for Plaintiffs' rights.

115.    DMC was unjustly enriched and benefited by its conversion of Skater, Plaintiffs' funds and the Mercury Engines and Drives.

116.    By virtue of the foregoing acts, conduct and omissions, on the part of DMC, constituting wrongful and unlawful conversion, DMC has been unjustly enriched and has caused Plaintiffs to suffer damages for the loss of the Skater, Plaintiffs' funds and the Mercury Engines and Drives in the amount of $140,000.00 or any other current reasonable value.

117.    Plaintiffs are further entitled to punitive damages, as well as costs, interest, fees and disbursements.

### SIXTH CAUSE OF ACTION- PROMISSORY ESTOPPEL

118.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "117" as if set forth in full herein.

119.    For the reasons detailed herein, DMC made numerous promises and representations to Plaintiffs concerning the Skater.

120.    Plaintiffs reasonably and foreseeably relied on DMC's promises.

121.    Plaintiffs were damaged in reliance on Defendant's promises.

122.    By virtue of the foregoing acts, conduct and omissions, on the part of DMC, Plaintiffs are entitled to recovery for promissory estoppel in the amount of $501,500.00.

## SEVENTH CAUSE OF ACTION-
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

123.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "122" as if set forth in full herein.

124.    In all contracts, there is an implied covenant of good faith and fair dealing.

125.    Under this covenant, the parties to a contract must deal with each other honestly and in good faith not only with respect to the performance of the contract, but also in their enforcement of the terms of the contract.

126.    For the reasons detailed herein, DMC has acted in bad faith in connection with the 2015 Contract, the 2016 Contract, and the agreement to market the Skater for sale.

127.    DMC's conduct constitutes a breach of the covenant of good faith and fair dealing.

128.    By virtue of the foregoing, Defendant is liable to Plaintiffs for damages in the amount in excess of $501,500.00.

## DEMAND FOR JURY TRIAL

129.    Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial to all issues triable by a jury.


Date:    September 30, 2019

DEILY & GLASTETTER, LLP

/s/ Leigh A. Hoffman

Leigh A. Hoffman, Esq.
*Attorneys for Plaintiffs*
8 Southwoods Blvd., Suite 207
Albany, New York  12211
Tel (518) 436-0344
E-Mail: lhoffman@deilylawfirm.com