UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KENNETH E. SALAMONE and
RUFSTR RACING, LLC,

                                **Plaintiffs,**

  vs.                                                   1:19-cv-01213
                                                         (MAD/DJS)

DOUGLAS MARINE
CORPORATION,

                                **Defendant.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

**LIPPES MATHIAS, WEXLER,**          **LEIGH A. HOFFMAN, ESQ.**
**FRIEDMAN LLP**
54 State Street, Suite 1001
Albany, New York 12207
Attorneys for Plaintiffs

**HARRIS, BEACH LAW FIRM**            **ELLIOT A. HALLAK, ESQ.**
677 Broadway, Suite 1101
Albany, New York 12207
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiffs, Kenneth E. Salamone and RUFSTR Racing, LLC, ("RUFSTR") commenced this action on September 30, 2019, alleging causes of action including deceptive business practices, breach of contract, unjust enrichment, fraud, conversion, promissory estoppel, and breach of the implied covenant of good faith and fair dealing. *See* Dkt. No. 1 at ¶¶ 64–128. On October 1, 2020, Plaintiffs filed a motion for partial summary judgement on Plaintiffs' second, fifth, and seventh causes of action. Dkt. No. 31. Defendant Douglas Marine Corporation

("Defendant") filed an opposition to Plaintiffs' motion on October 16, 2020. Dkt. No. 33. Currently before the Court is the Plaintiffs' motion for partial summary judgment. For the following reasons, Plaintiffs' motion is denied.

## II. BACKGROUND

Plaintiffs allege that a Contract of Sale was entered into with Defendant on or about December 31, 2015 ("the Contract") for a new Skater 388 Race Boat ("the Skater") and trailer. Dkt. No. 31-11 at ¶ 9. Plaintiffs assert that all parties were aware that the boat was to be delivered by August 2016 so that Plaintiffs could race it during the 2016 season. *Id.* at ¶¶ 18, 38. Plaintiffs advanced an initial payment of $300,000 to ensure completion of the boat by that time. *Id.* at ¶¶ 28-29. Plaintiffs allege that they purchased additional equipment necessary to complete the boat, namely, Mercury Racing Engines, transom assembly, and Super Speed Master Drives. *See id.* at ¶¶ 43-44. Defendant did not complete the boat by August 2016. *Id.* at ¶ 38.

On December 31, 2016, Plaintiffs made a payment of $61,500. Dkt. No. 33-1 at 18. On February 28, 2017, Defendant forwarded progress photos of the Skater to Plaintiff Salamone who responded "Omg. Awesome!!!" *Id.* On February 28, 2017, Plaintiffs authorized Defendant to order two Mercury 700 SCI engines. Dkt. No. 31-11 at ¶ 43. On March 2, 2017, Plaintiffs paid $140,000 for two engines and drives. *Id.* at ¶¶ 43-44. On June 27, 2017, Defendant and Plaintiffs spoke on the phone. *Id*. at ¶¶ 51-52. Defendant asserts that during the conversation, it informed Plaintiffs that the Skater was ready and emailed Plaintiffs a final invoice with pictures of the Skater. Dkt. No. 33-1 at 24-25. Plaintiffs assert that Defendant told them that the Skater was not completed. Dkt. No. 31-11 at ¶ 51. However, it is agreed that during this phone call, Plaintiffs told Defendant that they no longer wanted the Skater. *Id*.

On June 27, 2017, Defendant wrote to Plaintiffs and requested permission to sell the boat. Dkt. No. 32-26. Plaintiff Salamone emailed Defendant consenting to the sale. Dkt. No. 32-27. Defendant placed the boat for sale on www.powerboatlistings.com. *Id.* at 142-44. The listing stated that "the boat can be purchased with or without engines." *Id.* at 142. Plaintiffs' counsel acknowledged that they were pleased to see the posting on the website. Dkt. No. 31-37 at 17.

Defendant initially listed the boat for the Contract price, but dropped the price five times between June 2017 and March 2018 before getting an offer. Dkt. No. 33-1 at 39-40. Defendant eventually sold the Skater for $300,000 and the engines for $75,000. *Id.* at 29-30. Defendant remitted only $50,000 to Plaintiffs. *Id.* at 28. Defendant received the final payment for the Skater in October 2019, one month after this action was filed. *Id*. at 41.

In their motion for partial summary judgment, Plaintiffs assert that there is no genuine issue of material fact that Defendant breached the contract and the implied covenant of good faith by failing to tender delivery by August 2016. Further, Plaintiffs contend that Defendant converted their personal property by selling the two engines Plaintiffs purchased for the Skater and not remitting the proceeds to them from their sale or the balance paid for the Skater following its sale. Dkt. No. 31. The Court disagrees.

### III. DISCUSSION

**A.     Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at

3

36–37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252 (emphasis and alterations in original)). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' . . . and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

**B.      Choice of Law**

4

Plaintiff Salamone is a New York resident and Plaintiff RUFSTR is a New York[1] limited liability corporation. Dkt. No. 1 at ¶¶ 1-2; Dkt. No. 31-1 at ¶¶ 6, 8. Defendant is a Michigan Corporation with its offices and principal place of business in Michigan. Dkt. No. 31-1 at ¶ 8. The Contract does not specify a choice of law. Plaintiffs assert that the Court must apply New York Law when interpreting and applying the contract terms. Dkt. No. 31-62 at 5. Defendant disagrees and asserts that Michigan law is applicable. Dkt. No. 33 at 7-9.

"A federal court sitting in diversity applies the choice of law rules of the forum state." *Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "New York courts, in construing contracts, would apply the law of the jurisdiction having the greatest interest in the litigation." *Crescent Oil & Shipping Servs., Ltd. v. Phibro Energy, Inc.*, 929 F.2d 49, 52 (2d Cir. 1991). Similarly, "[i]n tort cases like this, New York applies the law of the state with the most significant interest in the litigation." *Lee*, 166 F.3d at 545 (citing *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 521 (1994)).

### 1. Breach of Contract Claims

When examining a breach of contract claim, the Second Circuit noted that, "[u]nder the law of New York, the forum state, the first step in a choice of law analysis is to determine whether an actual conflict exists between the laws of the jurisdictions involved." *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012) (citing *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (1993)). "If there is such a conflict, New York law looks to the 'center of gravity' of a contract to determine choice of law." *Id*.

---

[1] Plaintiffs assert in their complaint that RUFSTR is a Delaware LLC. Dkt. No. 1 at ¶ 2.

> Under the "center of gravity" approach, a court may consider a number of significant contacts, including the place of contracting, the place of performance, the physical location of property that is the subject matter of the contract, and the domiciles or places of business of the contracting parties. . . . The place of contracting and place of performance are given the greatest weight.

*Id.* (internal citation omitted).

While Defendant asserts that Michigan law applies, Defendant does not address any conflicts between New York and Michigan contract law other than regarding a breach of the implied covenant of good faith and fair dealing. *See* Dkt. No. 33 at 7-9. Regardless, the Court will engage in the "center of gravity" analysis. While this skips the first step of the analysis under New York law, the Court is unaware of any other conflicts that currently exists, and the parties fail to present any. Such an analysis would be time consuming and skipping directly into an analysis of the choice of law would not change the outcome in any way. This is because, if there is no conflict between the laws, then it is immaterial which law is applied. *See Stolarz*, 81 N.Y.2d at 225. If there is a conflict, then the Court has already determined which law should govern.

The Court will examine both Plaintiffs' breach of contract and the implied covenant of good fath and fair dealing using the center of gravity test. *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 Fed. Appx. 274, 278-79 (2d Cir. 2018) ("Under New York law, parties to an express contract are bound by an implied duty of good faith, 'but breach of that duty is merely a breach of the underlying contract'").

The Contract was formed via email with Plaintiffs using a Connecticut address to purchase the Skater and contracting with Defendant, a Michigan corporation. Dkt. No. 31-49 at 39. Plaintiffs' payments originated in Connecticut and were wired to Defendant's bank account at a Michigan bank. Dkt. No. 31-8 at 4. Defendant constructed the boat at their facility in Michigan

6

and it was to be delivered "FOB DOUGLAS MICHIGAN." Dkt. No. 31-9. The only in-person contact between the parties occurred in Michigan. Dkt. No. 31-2 at ¶ 79.

Plaintiffs assert that New York law applies because the transaction involved the sale of goods to a New York resident. Dkt. No. 34 at 1. First, this is insufficient as New York law clearly requires that the law of the state with the more significant contacts to be applied. *Crescent Oil*, 929 F.2d at 52. The location of the parties is considered but is not decisive. *See Forest Park Pictures*, 683 F.3d at 433. Second, Plaintiffs contracted with Defendant by listing a Connecticut address. Dkt. No. 31-9. Plaintiffs ordered the Skater through Plaintiff RUFSTR which used a Connecticut address for the purchase of the Skater. *Id*.

The facts demonstrate almost no connection between New York and the Contract. Rather, all significant contacts regarding the Contract were in Michigan, including the place of contracting and place of performance. *Forest Park Pictures*, 683 F.3d at 433 ("The place of contracting and place of performance are given the greatest weight"). Thus, the Court will apply Michigan law to Plaintiffs' breach of contract and the implied covenant of good faith and fair dealing claims.

### 2. Tort

"In tort cases like this, New York applies the law of the state with the most significant interest in the litigation." *Lee*, 166 F.3d at 545 (citing *Padula*, 84 N.Y.2d at 521). While "[t]he historical approach . . . to choice-of-law questions arising in tort cases in this State was to invariably apply the law of the place where the tort occurred to all substantive issues arising from the occurrence . . . the Court of Appeals long ago rejected this approach." *Shaw v. Carolina Coach*, 82 A.D.3d 98, 100-101 (2d Dep't 2011) (internal citations and quotation marks omitted). Analogously, the court held that "[t]he traditional rule has therefore been replaced by a more

flexible 'interest analysis,' under which 'the law of the jurisdiction having the greatest interest in resolving the particular issue' is given controlling effect." *Id*. at 101 (quotation and other citations omitted).

However, the "interest analysis" distinguishes "'between laws that regulate primary conduct (such as standards of care) and those that allocate losses after the tort occurs.'" *Id*. (quoting *Cooney v. Osgood Mach., Inc*., 81 N.Y.2d 66, 72 (1993)). "If the conflicting laws regulate conduct, the law of the place of the tort 'almost invariably obtains' because 'that jurisdiction has the greatest interest in regulating behavior within its borders.'" *Id.* (quotation omitted). Where "'competing postevent remedial rules are at stake, other factors are taken into consideration,' principal among which is the location of the parties' domiciles." *Id*. (quotation omitted).

Michigan's statutory conversion law provides that "[a] person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees: [a]nother person's . . . converting property to the other person's own use." Mich. Comp. Laws Ann. § 600.2919a(1)(A). Clearly, this law is not conduct regulating but provides a post-event remedial rule by only addressing the recovery for the conversion action. *See A & G Research, Inc. v. GC Metrics, Inc*., 19 Misc. 3d 1136(A), 862 N.Y.S.2d 806, 2008 WL 2150110, *17 (N.Y. Sup. Ct. 2008) (holding that a statute allocates loss and therefore is not conduct regulating where the statute which "prohibits, assigns, or limits liability after the tort has occurred").

However, "[w]hile MCL 600.2919a is rooted in the common-law form of conversion, statutory conversion is not the same as common-law conversion." *Elkins v. Benner*, No. 331701,

8

2017 WL 4518897, *4 (Mich. Ct. App. Oct. 10, 2017) (citing *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 497 Mich. 337, 361 (2015)).  "To support a claim for statutory conversion, it must be demonstrated that there existed a knowing purchase, receipt or aiding in the concealment of any stolen, embezzled or converted property."  *Morris v. Schnoor*, No. 315006, 2014 WL 2355705, *38 (Mich. Ct. App. May 29, 2014) (citing *Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich. App 94, 111 (1999)).  Under Michigan common law, "[t]he tort of conversion is 'any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.'"  *Head*, 234 Mich. App. at 111 (quoting *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391 (1992)).  Common law does not prohibit, assign, or limit liability and is therefore conduct regulating.

Some courts within New York have determined that the tort of conversion is regulatory *per se*.  *Keehfus Ltd. P'ship v. Fromkin Energy, LLC*, No. 1:06CV987, 2007 WL 2454217, *4 (N.D.N.Y. Aug. 23, 2007) ("Here, plaintiffs' claims for tortious interference with contract and conversion fall into the category of torts governing the appropriate standards of conduct.  As such, the law of the jurisdiction where the alleged tort occurred will apply because that jurisdiction 'has the greatest interest in regulating laws within its borders'"); *US Engine Prod., Inc. v. ISO Grp., Inc.*, No. 12-CV-447, 2013 WL 4500785, *5 (E.D.N.Y. Aug. 20, 2013); *see also Random Ventures, Inc. v. Advanced Armament Corp., LLC*, No. 12 CIV. 6792, 2014 WL 113745, *53 (S.D.N.Y. Jan. 13, 2014).  These cases rely on the assertion that the tort of conversion is one that the state in which the tort occurred has a significant interest in regulating the conduct.  *See Keehfus Ltd. P'ship*, 2007 WL 2454217, at *4.

Regardless, Michigan has a more significant interest in regulating Defendant's conduct than New York.  Defendant asserts that the engines were stored in Michigan, sold from its facility

9

in Michigan to a purchaser in Canada, and the funds from the alleged conversion were stored in Defendant's Michigan bank.  Dkt. No. 33 at 9; Dkt. No. 33-2 at ¶¶ 40, 59-60.  Plaintiffs do not respond to these assertions, assert any connection between New York and the conversion, or provide any argument that New York law applies to their conversion claims.  *See* Dkt. No. 31 at 13-1; Dkt. No. 34 at 1.  The First Department has held that even where a conversion happened in New York, English law applied to the tort as the property was housed in England until the sale and there were no other connections to New York.  *Goldsmith v. Sotheby's, Inc*., 52 A.D.3d 230, 230-31 (1st Dep't 2008).  Here, no part of the alleged conversion occurred in New York.  Therefore, Michigan has the greater interest in regulating this conduct and Michigan law will apply to Plaintiffs' conversion claim.

### 3. Breach of Contract Claim

Plaintiffs have moved for partial summary judgment on their claim for breach of contract.  Dkt. No. 31-62 at 5-11.  Plaintiffs assert that Defendant breached the Contract by failing to deliver the Skater by August 2016, in time for the 2016 racing season.  *Id*. at 14.  The Court disagrees.

Under Michigan Law, "[a] party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Const., Inc*., 495 Mich. 161, 178 (2014).  However, "'[h]e who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform.'" *Konos, Inc. v. California Farms, LLC*, No. 1:16-CV-624, 2018 WL 2739956, *4 (W.D. Mich. Apr. 27, 2018) (quoting *Chrysler Int'l Corp. v. Cherokee Export Co*., 134 F.3d 738, 742 (6th Cir. 1998)).  Thus, where a party commits a material breach, they are precluded from "suing for a subsequent breach relating to [the other party's] performance." *Konos*, 2018 WL 2739956, at *5.

"Generally, the materiality of a breach is a question of fact. However, where the facts are undisputed, materiality may be decided as a matter of law." *Id*. at *4.

Neither party disputes that there was a valid contract. Dkt. No. 31-62 at 6; Dkt. No. 33 at 9. Plaintiffs assert that they had fulfilled their obligations under the Contract at the time they assert Defendant breached the Contract. Dkt. No. 31-62 at 6-7. Defendant claims that Plaintiffs breached the Contract by withdrawing before making the final payment. Dkt. No. 33 at 9. While Plaintiffs assert that they had made all payments required by the Contract, they acknowledge that they did not pay the full balance. *Id*. at 7. Plaintiffs assert that the final payment had not been due yet as a final invoice was never sent to them. *Id*.

"When a seller fails to make delivery and if the breach goes to the whole contract, the buyer may cancel the contract." *Surefil, LLC v. Bonne Bell, LLC*, No. 1:09-CV-379, 2010 WL 3059209, *4 (W.D. Mich. Aug. 4, 2010) (citing M.C.L. § 440.2711(1)). "A 'cancellation' occurs when 'either party puts an end to the contract for breach by the other' party." *Surefil*, 2010 WL 3059209, at *4 (quoting M.C.L. § 440.2106(4)). A buyer may cancel a contract under the Michigan Commercial Code where "the products were not delivered on the agreed upon date." *Id*.

However, the Michigan Supreme Court has held that where a buyer delays the progress of the seller such that the seller cannot comply with the timing for delivery specified in the contract, the buyer has waived the right to delivery by that time. *Sterling Wheelbarrow Co. v. Great Lakes Foundry Co.*, 225 Mich. 395, 400 (1923). Nevertheless, the buyer is still entitled to delivery within a reasonable time once they have fulfilled their obligations to the contract such that the seller could now perform. *Id*. ("It is apparent that the provision in the order that the flasks should be delivered within four weeks after plaintiff received the sample bars had been abandoned, and the right to rely thereon waived. But defendant was entitled to delivery within a reasonable time

11

after the sample bars designed by plaintiff were approved by it").

The reasonableness of the subsequent delivery is determined by considering factors such as "[t]he necessities of the defendant, known to plaintiff, the time within which plaintiff agreed it would deliver, and the conditions then existing as to factory work. . . ." *Id.* "If there was unreasonable delay, chargeable to [the buyer] alone, [the seller] would have been entitled to the damages it sustained caused thereby." *Id.*

In the present matter, Plaintiffs' obligations under the contract are unclear. Under Michigan law, Plaintiffs could have canceled the contract in August 2016 when Defendant failed to deliver the Skater. *Surefil*, 2010 WL 3059209, at *4. By canceling the contract, Plaintiffs would have had no further obligations and therefore would not have been required to pay the remaining balance under the Contract. *See* Mich. Comp. Laws Ann. § 440.2507 ("Tender of delivery is a condition to the buyer's duty to accept the goods and, unless otherwise agreed, to his duty to pay for them"). However, Defendant presents evidence that Plaintiffs waived delivery by August 2016 and therefore were only entitled to delivery within a reasonable time. For example, Defendant asserts that the date for delivery was pushed because Plaintiffs failed to timely submit their order, select, and purchase engines, provide paint codes, and requested additional work such as a custom paint job and installation of the engines. Dkt. No. 33 at 10-16. Therefore, the August 2016 delivery was seemingly waived by Plaintiffs. *Id*. at 10.

The parties dispute whether the manufacturing of the boat was dependant on these factors. Dkt. No. 33-1 at 25-26. A Douglas Marine Corp. representative testified that Plaintiffs' delays made the original completion date impossible, specifically because the Skater needed to be built around the engines. Dkt. No. 31-57 at 26-27. Plaintiffs do not provide any evidence that the construction of the Skater could have been completed before selecting the engines but merely state

12

that Defendant delayed their selection by not asking for paint codes or engine selections.  Dkt. No. 34 at 5-6.  However, Plaintiff Salamone testified at his deposition that the Skater originally had a Mercury 850 engine and Plaintiffs changed the engine two more times before authorizing the purchase of the Mercury 700 in February 2017.  Dkt. No. 31-55 at 52-54, 84-85, 103-04.

If Plaintiffs were only entitled to a reasonable time for delivery following the delays, then their right to cancel the contract for Defendant's failure to tender delivery within a reasonable time is based on whether the delivery was in fact made in a reasonable time.  *See Sterling Wheelbarrow*, 225 Mich. at 400.  "Whether a reasonable time has elapsed is generally a question for the trier of fact."  *Bev Smith, Inc. v. Atwell*, 301 Mich. App. 670, 681-82 (2013) (citing *Moore v. First Security Cas. Co.*, 224 Mich. App. 370, 379 (1997)).

Additionally, Plaintiffs continued to make payments, request changes to the Skater, order equipment, and express excitement past August 2016 and up until they withdrew from the Contract in June 2017.  Dkt. No. 31-19; Dkt. No. 31-20; Dkt. No. 33-2 at ¶¶ 18, 28.  Such is evidence that Plaintiffs waived the August 2016 delivery requirement.

For those same reasons, it is unclear whether Defendant breached the Contract by failing to deliver the Skater by August 2016 or a reasonable time thereafter.  Consequently, a genuine issue of material fact still exists regarding the second part of Plaintiffs' breach of contract claim and Defendant's defense that Plaintiffs breached the contract first and are therefore barred from asserting a breach of contract claim.  Therefore, summary judgement regarding Plaintiffs' claim for breach of contract is inappropriate and must be denied.

### *4. Conversion*[2]

Plaintiffs have moved for partial summary judgment on their claim for conversion. Dkt. No. 31-62 at 13-14. Plaintiffs assert that there is no issue of material fact regarding whether Defendant converted Plaintiffs' personal property by selling the engines that Plaintiffs had purchased through Defendant to Happy Days Marina for $75,000. *Id*. at 14. The Court disagrees.

"Common law conversion . . . consists of any 'distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.'" *Dep't of Agric. v. Appletree Mktg., L.L.C.*, 485 Mich. 1, 13-14 (2010) (quoting *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391 (1992)). "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Dep't of Agric.*, 485 Mich. at 14. "The gravamen of conversion is the non-privileged interference with superior possessory rights, generally in tangible property." *In re Pizzano*, 439 B.R. 445, 450 (Bankr. W.D. Mich. 2010). Consent is a complete defense to a claim for conversion. *See Earl Pegues, L.L.C. v. Izis Gen. Contractors, L.L.C.*, No. 327931, 2016 WL 5887831, *3 (Mich. Ct. App. Oct. 6, 2016) (citing *Head*, 234 Mich. App at 111–12).

---

[2] "To support a claim for statutory conversion, it must be demonstrated that there existed a knowing purchase, receipt or aiding in the concealment of any stolen, embezzled or converted property." *Morris*, 2014 WL 2355705, at *38 (citing *Head*, 234 Mich. App. at 111). Plaintiffs do not rely on Michigan law. Rather they cite to *Colavito v. New York Organ Donor Network, Inc*., 8 N.Y.3d 43, 49–50 (2006), which noted that "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." Dkt. No. 31-62 at 13. Plaintiffs' claim more resembles a common law conversion claim under Michigan law rather than a statutory conversion claim. Therefore, the Court will apply Michigan common law.

Plaintiffs assert that they purchased engines and drives for $140,000 through Defendant on March 2, 2017.  Dkt. No. 31-62 at 12, 14.  Plaintiffs assert that Defendant sold the engines for $75,000 and only remitted $50,000 to Plaintiffs from the sale.  *Id*.  In addition, Plaintiffs assert that Defendant sold the Skater for $361,500 and did not return any of the $501,000 paid by Plaintiffs.  *Id*.  Plaintiffs assert that they are still owed $451,500 from the sale, $361,500 for the Skater and $75,000 for the drives.  *Id*.   Plaintiffs assert that Defendant promised in writing to pay Plaintiffs the proceeds from the sale, however, Plaintiffs do not cite to any evidence in their argument demonstrating the sale, Defendant's promise, or their damages.  *Id.*  Such deficiencies alone are enough for the Court to deny summary judgment.  Fed. R. Civ. P. Rule 56(c).

Regardless, Defendant asserts that summary judgment is inappropriate because there is evidence that Plaintiffs consented to the sale and the use of the proceeds to cover Plaintiffs' remaining balance of $222,059.  Dkt. No. 33 at 23-25.  On June 27, 2017, Defendant sent a letter to Plaintiff Salamone requesting his permission to sell the Skater and use the proceeds to pay the remaining balance.  Dkt. No. 31-26.  Plaintiff Salamone emailed Defendant consenting to the sale. Dkt. No. 32-27.  While Plaintiffs assert that the Defendant improperly sold the engines, the Skater was placed for sale on www.powerboatlistings.com and as of June 29, 2017, the listing stated "the boat can be purchased with or without engines."  Dkt. No. 31-52 at 142.  Plaintiffs' counsel acknowledged that they saw the posting on the website and were pleased.  Dkt. No. 31-37 at 17.

Plaintiffs acknowledge that they still owed $222,059 and that the proceeds from the sale would be used to pay the remaining balance.  *Id.*  While Defendant eventuality sold the boat for $300,000, Defendant was not paid the entire contract price until it finished the work requested by the purchaser in October 2019–one month after Plaintiffs filed this action.  Dkt. No. 1; Dkt. No.

31-57 at 90-91.  Defendant asserts that the proceeds from the sale of the Skater and the remaining $25,000 from the sale of the engines were retained by Defendant to allow for a final accounting of all money received and Plaintiffs' outstanding balance.  Dkt. No. 33 at 24.

Plaintiffs have failed to establish a lack of genuine issue of material fact as to any distinct act of domain by Defendant wrongfully exerted over Plaintiffs' personal property in denial of or inconsistent with their rights.  Further, Defendant has established an issue of material fact that Plaintiffs consented to the sale of the engines and that Defendant had not yet obtained possession of the proceeds from the sale of the Skater prior to this action.  Therefore, summary judgment regarding Plaintiffs' conversion claim is inappropriate and Plaintiffs' motion must be denied.

### 5. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs assert that they are entitled to summary judgment because there is no issue of material fact that Defendant failed to deliver the Skater by August 2016 and thus breached the implied covenant of good faith and fair dealing.  Dkt. No. 31-62 at 11-12.  The Court disagrees.

"Since 1964, the UCC has imposed an obligation of good faith on contracting parties." *Fodale v. Waste Mgmt. of Michigan, Inc.*, 271 Mich. App. 11, 34 (2006).  Parties may not waive this obligation.  *Id.*  "However, Michigan [common law] does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing."  *Id.* (citing *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 476 (2003)).  "An implied covenant of good faith and fair dealing in the performance of contracts is recognized by Michigan law only where one party to the contract makes its performance a matter of its own discretion."  *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003).  As such, Michigan courts have routinely dismissed claims where a party asserts a breach of the implied covenant of good faith.  *Stokes v. U.S. Bank Tr., N.A.*, No.

15-14177, 2016 WL 4107719, *7 (E.D. Mich. May 6, 2016) (citing *Austerberry v. Wells Fargo Home Mortg.*, No. 15-CV-13297, 2015 WL 8031857, *8 (E.D. Mich. Dec. 7, 2015); *Fredericks v. Allquest Home Mortgage Corp.*, No. 15–10429, 2015 WL 1966856, *4 (E.D. Mich. Apr. 30, 2015); *Cheesewright v. Bank of Am., N.A.*, No. 2:11–CV–15631, 2013 WL 639135, *5 (E.D. Mich. Feb. 21, 2013)).  Similarly, the Michigan Court of Appeals has rejected that a breach of the good faith and fair dealing is actionable under Michigan law.  *Fodale*, 271 Mich. App. at 35.

As Michigan law applies, Plaintiffs' motion for summary judgment regarding their claim for breach of the implied covenant of good faith and fair dealing must be denied.[3]

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' motions for summary judgment (Dkt. No. 31) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: December 15, 2020
Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[3] Defendant has not moved for summary judgment on this claim.  However, as Michigan Law does not recognize a breach of the implied covenant of good faith and fair dealing, the parties should be prepared to discuss at some point before trial whether this claim can proceed.