# EXHIBIT "B"

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

*****************************************************

KENNETH E. SALAMONE AND RUFSTR RACING, LLC,          *

                          Plaintiffs,          *

            -v-    19-cv-1213          *

DOUGLAS MARINE CORPORATION,          *

                  Defendant.          *

*****************************************************


               TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE MAE A. D'AGOSTINO
              April 22, 2021
          445 Broadway, Albany, New York


FOR THE PLAINTIFFS:

LIPPES MATHIAS WEXLER FRIEDMAN, LLP.
BY:  Leigh Hoffman, Esq.
    Jason Little, Esq.
54 State Street
Albany, New York 12207

FOR THE DEFENDANT:

HARRIS, BEACH LAW FIRM
BY:  Elliot A. Hallak, Esq.
    Daniel R. LeCours, Esq.
677 Broadway
Albany, New York 12207

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1           (Held out of presence of jury)

2           THE COURT:  Record should reflect that we are

3    in open court, outside the presence of the jury, for a

4    charge conference and to deal with issues of law.

5           First of all, last night I took the

6    opportunity to review further the evidence adduced at

7    trial.

8           On April 21st, the Court reserved on

9    defendant's motion for directed verdict regarding

10   plaintiffs' conversion and fraud claims.  The Court will

11   now grant defendant's motion as to these claims.

12           Defendant's motion regarding plaintiffs'

13   claims for fraud may be granted as there is no legally

14   sufficient evidentiary basis for a reasonable jury to

15   find in favor of the plaintiffs.

16           Plaintiffs have failed to put forth facts

17   demonstrating that defendant knowingly made a false

18   statement of material fact with the intent that

19   plaintiffs rely on their misrepresentation and that

20   plaintiffs did so reasonably.

21           Plaintiffs testified that defendant made

22   fraudulent misrepresentations in letters on June 27th,

23   2017, and July 5th, 2017, and in text messages

24   throughout 2017, 2018 and 2019.

25           Plaintiffs claim that this induced them to

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1  make payments on a Skater and purchase the Mercury

2  engines and drives.  However, plaintiff made these

3  payments on December 31, 2015, December 30th, 2016, and

4  March 2nd, 2017, as demonstrated in Joint Exhibits 6, 14

5  and 20.  All of the alleged fraudulent letters occurred

6  after these payments; Joint Exhibits 25 and 29.

7         Finally, the alleged 2017 text messages prior

8  to March 2nd, 2017, were mainly requests from the

9  plaintiff for photos of the Skater and photos sent in

10  response to those requests; Joint Exhibit 43.

11         The only other conceivable progress report in

12  these text messages was on January 31st, 2017, when

13  Plaintiff Salamone asked whether the Skater was painted,

14  and Mr. Cutsuries said, quote, not yet.  Not only have

15  the plaintiffs failed to prove that Mr. Cutsuries'

16  assertion that the Skater was not yet painted was false,

17  but that they reasonably relied on this assertion to

18  make the March 2nd, 2017, payment.

19         Additionally, plaintiffs asserted in their

20  complaint that defendant made false representations

21  regarding sale of the Skater to Mr. Sheker; docket

22  number at 98.

23         However, plaintiffs failed to present any

24  evidence demonstrating that defendant knowingly made

25  these false statements of material fact with the intent

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

4

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   that plaintiffs rely on their misrepresentation and

2   plaintiffs did so reasonably.  In fact, plaintiffs

3   offered no evidence that they relied on these statements

4   regarding the sale of the boat.  The only arguable

5   reliance was that plaintiff flew to Michigan based on

6   these statements to discuss the sale of the boat.

7          However, there is no evidence that plaintiff's

8   flying to Michigan to discuss the sale of the Skater was

9   reasonable.  There were many other ways that plaintiff

10  could have discussed sale of the Skater by text, which

11  he had done often by phone, just to mention a couple.

12         A jury cannot find that plaintiff's trip to

13  Michigan was reasonable, as I said, as all previous

14  communications were via text, phone and email.

15         Mr. Hledin testified that plaintiff had never

16  traveled to Michigan before his trip in May 2018, not

17  even to tour the facility or examine the Skater or its

18  progress.  However, upon no new information being

19  provided to him as to the sale of the Skater, the

20  plaintiff flew to Michigan to communicate with

21  defendant.  Thus, plaintiffs have not provided any

22  evidence that Mr. Salamone reasonably relied on

23  defendant's assertions that the boat had not sold when

24  he traveled to Michigan.

25         Therefore, there is no legally sufficient

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1  evidentiary basis for a reasonable jury to find in favor
2  of the plaintiffs on their fraud claim, and defendant's
3  motion for a directed verdict is granted.
4          Similarly, plaintiffs' conversion claim must
5  be dismissed because they are duplicative and seek
6  double recovery of their breach of contract claims; see
7  Toyz versus Wireless Toyz, Incorporated, 799 F.Supp 2d
8  737, 746, Eastern District of Michigan 2011.
9          While the plaintiffs assert that the Mercury
10  engines, transoms and drives were purchased through a
11  separate agreement, subsequent invoices and documents
12  demonstrate that the final contract was inclusive of
13  these items.
14          Further evidence of this is that plaintiffs
15  seek recovery of the payment of the Mercury engines,
16  drives and transoms through their breach of contract
17  claim.  The fact that the purchase of these items was
18  incorporated into the final contract is further
19  supported by the fact that the agreement provided that
20  the defendant was required to place the Mercury engines,
21  drives and transoms into the Skater before delivery or
22  tender to plaintiffs.
23          Finally, dismissal of this claim is
24  appropriate because under Michigan law, an action in
25  tort requires a breach of duties separate and distinct

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   from a breach of contract, which has not been alleged or
2   established in this matter; Brock versus Consolidated
3   Biomedical Labs, 817 F.2d 24, 25, Sixth Circuit 1987.
4   Also Massa versus Eaton Corporation, 1989 Westlaw 101914
5   at 3, Western District of Michigan 1989.
6          Accordingly, the Court grants defendant's
7   motion as to plaintiffs' conversion claim.
8          Finally, the Court denied plaintiffs' motion
9   to dismiss all defendant's affirmative defenses.  To the
10  extent that defendants have not proven these defenses at
11  trial or given proposed jury instructions encompassing
12  these defenses, they are being waived at this time.
13         I want to ask counsel some questions about
14  numbers in this case.  Before I do that, let me say that
15  when I realized that there were 99 stipulations as to
16  fact, I decided not to read them during my final
17  instruction to the jury.  Rather, we have redacted
18  Defendant's Exhibit D5 and are sending in only the
19  stipulated facts, and you can take a look at that, and
20  you will take a look at it before it goes in to the
21  jury.  I will remind the jury that there were factual
22  stipulations and that they will have them in the
23  courtroom.
24         Are we at least able to tell this jury or am I
25  able to tell this jury an agreed-upon contract price for

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

7

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    this Skater?

2            MS. HOFFMAN:  Good morning, your Honor.  Yes,

3    I think we would agree on the contract price and the

4    payments that --

5            THE COURT:  And what is that, according to

6    both sides?

7            MS. HOFFMAN:  The -- the contract price?

8            THE COURT:  Yes.

9            MS. HOFFMAN:  Sorry, Judge.

10           THE COURT:  I want to see if both sides agree

11   at this point what the contract price was because I'd

12   just like to spit it out for the jury.  I believe I know

13   what it is, but I want to hear it from you.

14           MS. HOFFMAN:  I think it's 555 --

15           THE COURT:  What I have is 542117 but take a

16   moment, confer, and tell me what the contract price was.

17           MS. HOFFMAN:  Just one second, Judge, we will.

18           THE COURT:  Take your time.

19           MS. HOFFMAN:  So, Judge, Joint Exhibit 5, the

20   contract dated December 31, 2015, it's a contract price

21   at 255,559, and that number has been increased, Judge,

22   because the prior contract had that question mark as to

23   whether the additional hatch would have been included.

24   It was included, and that brings us to the 255559.

25           MR. LITTLE:  I think that's -- I think the

                    Lisa L. Tennyson, CSR, RMR, FCRR
                 UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   total -- I think the total contract price was 555559.

2   There's a $13,000 addition to the 542 number, your

3   Honor, in Joint Exhibit 5.  That brought the total to

4   555, less credit of 300,000 paid.

5           THE COURT:  Do you agree that the contract

6   price, defense counsel, is 555,559?  We have to give the

7   jury some guidance.

8           MR. LECOURS:  Your Honor, that number doesn't

9   include the engines that were added to the contract.  So

10  I think you have to add 140,000.

11          THE COURT:  Do you agree you have to add

12  140,000?

13          MS. HOFFMAN:  We do, Judge.

14          THE COURT:  I didn't bring my calculator in.

15  Use your phones and tell me what the full amount is,

16  then.

17          MS. HOFFMAN:  I want to go on a limb, 695559.

18          THE COURT:  That's what I have, even without

19  my calculator; 695559.

20          MR. HALLAK:  There are I think --

21          THE COURT:  You have to use the microphone.

22          MR. HALLAK:  I think there are a couple of

23  issues that we need to talk about.  There's the -- we

24  are talking about add-ons to the contract.  I think we

25  also need to talk about the cost of the paint that was

              Lisa L. Tennyson, CSR, RMR, FCRR
            UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   added on afterwards, and I also see from -- just going

2   through the letters that I thought that was always a

3   good starting point after the rejection of the boat, we

4   have --

5           THE COURT:  I just want to know what the

6   contract price was.

7           MR. HALLAK:  So it would be 723559 plus 38,500

8   for the cost of the paint.

9           THE COURT:  As I look at your trial briefs,

10  none of the numbers make any sense to me.

11          MR. HALLAK:  Your Honor, that was based off of

12  the invoice that we had submitted to Mr. Salamone on

13  2/27/2017 and also Ms. Hoffman's letter dated June 30th,

14  2017, that is Exhibit 28, which says as you are

15  certainly aware, the balance due on the boat is 222059,

16  but the purchase price of this boat is 723559, but that

17  also did not include the 38,500 for the paint.

18          THE COURT:  Is that accurate, Ms. Hoffman, in

19  your view?

20          MS. HOFFMAN:  Judge, just give me a quick

21  second, if I can.

22          THE COURT:  Yes.

23          MS. HOFFMAN:  Do you have that exhibit?

24          (Pause in proceeding.)

25          MS. HOFFMAN:  I would agree.  I would agree.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    We can use the 723559.

2             THE COURT:  Plus the 38,000 for paint?

3             MS. HOFFMAN:  No, Judge.  We assert that

4    number appeared in October, and we disputed that all

5    along that that was included in the contract price.  So

6    we do not agree that the 38 five in any way was part of

7    this contract.

8             MR. LECOURS:  Your Honor, a suggestion might

9    be that the parties agree that the contract price was

10   723559.  The parties -- plaintiffs assert that the paint

11   was not included in the contract; the defendants assert

12   that it was and state the amount.

13            THE COURT:  Will that work?

14            MS. HOFFMAN:  That works for me.

15            THE COURT:  Okay.  Plaintiffs assert that the

16   sum of 38,000 was not included in the contract, and

17   defendants assert that it was.

18            MR. HALLAK:  I think it's the other way

19   around.  I think plaintiff is asserting that the cost of

20   the paint was included in the 723, and we're asserting

21   that the cost of the paint was extra.

22            THE COURT:  Okay.

23            MR. LECOURS:  That's right.  Sorry.

24            THE COURT:  Plaintiffs assert that 38,000

25   was included?

─── SALAMONE v DOUGLAS MARINE - 19-cv-1213 ───

1          MR. HALLAK:  No.

2          THE COURT:  Was not?

3          MR. HALLAK:  The plaintiffs assert that the

4    38,500 was included in the purchase price of the

5    contract.  The defendants assert that the cost of paint

6    was not included in the cost of the contract and was an

7    additional charge of $38,500.

8          MS. HOFFMAN:  We don't assert that the 38 five

9    was in the contract.  We assert that paint was included.

10   They assert it was an additional charge for paint.

11         THE COURT:  Okay.  So plaintiff asserts that

12   $38,000 --

13         MS. HOFFMAN:  We assert paint was included.

14         THE COURT:  All right.  Let me just get this

15   down.  Plaintiff asserts that paint price was included?

16         MS. HOFFMAN:  The cost of paint was included

17   in the price of the contract and the defendant

18   asserts --

19         MR. HALLAK:  The cost of paint was an

20   additional charge in the amount of $38,500.

21         MS. HOFFMAN:  That's it.

22         THE COURT:  38,500.  Is that the number?

23         MR. HALLAK:  Yes.

24         THE COURT:  Okay.  So both sides agree that

25   the contract price was $732,559.  At issue is whether --

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    MR. HALLAK:  As a small correction, your
2    Honor.  The number is 723,559.
3        THE COURT:  Okay.  723559, however,
4    the plaintiff asserts that the cost of paint was
5    included in the contract, and the defendant asserts that
6    the cost of the paint was an additional charge, and the
7    amount in question for that is 38,500.
8        MR. HALLAK:  That's correct, your Honor.
9        THE COURT:  Okay.  So at least I can tell this
10   jury that you stipulated to the contract price 723559,
11   and then I'll go into the cost of the paint.
12       Is there an agreement on what the plaintiff
13   actually paid?  Is there a number that I can give to the
14   jury that you all agree is what the plaintiff paid?
15       MR. HALLAK:  I think we would agree on all
16   sides that the plaintiff paid a total of 500 --
17       MS. HOFFMAN:  501 five.
18       MR. HALLAK:  501500.
19       MS. HOFFMAN:  And we would agree that the
20   plaintiff received $50,000 back.
21       MR. HALLAK:  Correct.
22       THE COURT:  Hang on a second.  Give me the
23   number that you agree that the plaintiff paid in total.
24       MS. HOFFMAN:  I'm sorry, your Honor?
25       THE COURT:  Give me the number that you agree

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    that plaintiff paid in total.

2              MS. HOFFMAN:  Plaintiff paid total of 501,500.

3              THE COURT:  $501,500.

4              MS. HOFFMAN:  Yes, ma'am.

5              MR. LECOURS:  Agreed.

6              THE COURT:  Is there anything else you want me

7    to tell the jury you agree on with respect to the

8    statistics?  Numbers?  Because after they are in there

9    for 30 seconds, they are going to call for a calculator.

10             MS. HOFFMAN:  We would agree that

11   the defendants remitted $50,000 to the plaintiff.

12             THE COURT:  Agree?

13             MR. HALLAK:  Yes.

14             MR. LECOURS:  Agree.

15             THE COURT:  Okay.  Defendant remitted 50,000.

16   Okay.  At least that gives them a little guidance.

17             MS. HOFFMAN:  I think we would agree, your

18   Honor, that if the jury found for the plaintiff, the

19   amount of damages is a fixed number of 451,500.

20             THE COURT:  That's the 501 minus the --

21             MS. HOFFMAN:  It is, your Honor.

22             THE COURT:  -- 50?  Is that the agreed-upon

23   damages if they find for the plaintiff?

24             MR. LECOURS:  Subject to mitigation.

25             THE COURT:  Assuming mitigation has been

                    Lisa L. Tennyson, CSR, RMR, FCRR
                 UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    proven.

2              MR. LECOURS:  Yes, assuming that they believe

3    that the defendant proved mitigation by a preponderance

4    of the evidence, as stated, I believe, in the proposed

5    charge, then the 451 five should be reduced by whatever

6    amount of mitigation the jury deems has been proven.

7              THE COURT:  You know what?  I --

8              MS. HOFFMAN:  I thought you dismissed the

9    affirmative defense a few minutes ago.

10             THE COURT:  Since -- what mitigation did the

11   defense prove?

12             MR. LECOURS:  Failure mitigation.  It's the

13   lack of steps that were taken by Mr. Salamone to

14   participate in the sale, and then also that when he was

15   involved --

16             THE COURT:  You say that when he participated

17   in the sale, he messed it up.  I mean --

18             MR. LECOURS:  Initially the sale -- it was --

19   it was his idea to list this boat at a, you know, the

20   top price, initially, and pressured them to do that.

21   That, you know, impeded the efforts to sell the boat,

22   delayed those efforts, and then when he was involved

23   later, he made difficult and rendered impossible the

24   first sale.

25             THE COURT:  As I said yesterday, that's very

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    speculative but I'll take that under advisement.

2            MS. HOFFMAN:  There's no number that they ever

3    provided or demonstrated or even attempted to prove.

4            THE COURT:  I know.  There is no number.  It's

5    very speculative.  I'll take it under advisement.  When

6    you folks gave me your proposed charges, and you gave me

7    the proposed charges on damages, which begin at page 15,

8    what I handed out to you and it continues on page 16 and

9    17, you both said that you agreed with those -- that

10   charge on damages.

11           Do both sides still agree with that charge as

12   was given to me in the pretrial stips as what I should

13   charge the jury?  That's taken out of your proposal to

14   me.

15           MR. LECOURS:  Yes, your Honor.

16           MR. HALLAK:  The only thought that I had on

17   that, I apologize, your Honor, is that one possible

18   addition on 16 in the bolded part.

19           THE COURT:  Use your microphone.

20           MR. HALLAK:  Sorry.  Right -- bottom of page

21   16, Section B-2, breach of contract damages, we have

22   amounts, the amounts paid by plaintiffs that the

23   defendant -- the contract price, and I think the other

24   component that we might want to add back in is the

25   amount paid by the defendant to the plaintiff.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

16

─────SALAMONE v DOUGLAS MARINE - 19-cv-1213─────

1          THE COURT:  The amount the plaintiff paid to
2     the defendant --
3          MR. HALLAK:  Contract price.
4          THE COURT:  The contract price.  Do you still
5     want the expenses the plaintiff saved as a result of the
6     breach?
7          MS. HOFFMAN:  No, Judge.  I don't think
8     anybody has any evidence on that issue.
9          MR. LECOURS:  I think the -- that we put in
10    evidence of all the costs that we incurred in the sale
11    of the boat, and those were costs that Mr. Salamone
12    would have incurred; storage, charges along the lines --
13    and then all the charges that were incurred selling the
14    boat to Mr. Sheker.
15         THE COURT:  When you say the expenses the
16    plaintiffs saved as a result of the breach, you're
17    talking about storage and advertising?
18         MR. HALLAK:  And all the additional work that
19    we had to do to make the sale happen, including the
20    additional rigging work --
21         MR. LECOURS:  I was just going to say that
22    that's the difference between what would the rigging
23    would have been done, you know, at fair value as opposed
24    to the very discounted rate for the rigging work that
25    they ultimately had to use to resell the boat to

                    Lisa L. Tennyson, CSR, RMR, FCRR
               UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

```
 1    Mr. Sheker.
 2             MS. HOFFMAN:  Your Honor, if I can address
 3    that.  That sentence says subtract the expenses the
 4    plaintiff saved.  The plaintiff didn't save any of those
 5    expenses.  Those were expenses the defendant entered
 6    into a separate contract for --
 7             THE COURT:  Well --
 8             MS. HOFFMAN:  -- as a --
 9             THE COURT:  Go ahead.
10             MS. HOFFMAN:  All of those items that they
11    just recited are not consequential damages of the
12    plaintiff.  Those are steps that they took in a separate
13    contract with a separate purchaser.  They don't relate
14    in any way to the breach of contract damages.
15             MR. LECOURS:  Your Honor, just to respond to
16    that briefly.  They are not damages for the plaintiff.
17    It's a subtraction from their damages.  These are --
18    because these are costs associated with selling the
19    boat, if Mr. Salamone had sold the boat, those are costs
20    he would have incurred.
21             MS. HOFFMAN:  But he didn't own the boat and
22    we stipulated to that.  So that's a hypothetical that
23    doesn't exist here, Judge, and we are going to ask the
24    jury to pretend that they could understand that if he
25    hypothetically owned the boat, that they have -- that
```

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   the parties stipulated we didn't own, that

2   hypothetically, he could have had to have incurred

3   costs.

4          THE COURT:  I tend to agree with Ms. Hoffman

5   on that.  When I look at B there, from the amount the

6   plaintiff paid to defendant, which we have now

7   stipulated was 501500?

8          MR. HALLAK:  Correct.

9          THE COURT:  You must subtract the contract

10  price, which is 723059, and that ends up in a negative

11  number.  What are we doing?

12         MR. LITTLE:  I think two and one need to be

13  flipped.  I think you need to subtract the amount that

14  plaintiff paid from -- no, that's not right, either.  I

15  apologize.

16         MS. HOFFMAN:  Defendant paid to us, your

17  Honor.

18         THE COURT:  From the amount --

19         MS. HOFFMAN:  That plaintiffs paid to

20  defendant.

21         THE COURT:  Yes.

22         MS. HOFFMAN:  I think we insert there 501

23  five.  Defendant paid plaintiff $50,000, and then I

24  think we need to strike the balance of that and say the

25  resulting contract damages are $451,500.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1          THE COURT:  This is why I like people to
2    really think about pretrial submissions because this
3    makes no sense.  What is it that you intended to say?
4          MR. LECOURS:  I think that the amount the
5    plaintiffs paid should be flipped with the contract
6    price, and in the -- so from the contract price, you
7    must subtract the amount plaintiffs paid to the
8    defendant.  No, that doesn't --
9          MR. LITTLE:  That leaves --
10          MS. HOFFMAN:  That assumes that they didn't
11    sell the boat for 300 additional thousand dollars.
12          THE COURT:  From the contract price of
13    723,500, plus or minus 38,000, whatever that number --
14    38,500, you must subtract the amount plaintiff paid to
15    the defendant, which is 501500?  Let's try to figure out
16    what we're really trying to say here.
17          MS. HOFFMAN:  Your Honor, I'm sorry, while
18    they consult, I'm sure they can listen too.  So in --
19    in -- under 2 and in line A, instead of asking them to
20    determine certain amounts, we would indicate that this
21    line is -- the parties have stipulated to the following
22    amounts.  The amount the payment -- they don't -- we
23    know now that that line where it says first you must
24    determine.  As a result of the proof in the case, we can
25    tell them that parties stipulate.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1          THE COURT:  What do you stipulate to?

2          MS. HOFFMAN:  The amount the plaintiff -- at

3   Roman numeral ii, I'm sorry, I don't know why I said

4   two, I think it's supposed to be a one, but it would be

5   one is the amount the plaintiff paid to defendant.

6          THE COURT:  Which I know is 501500.

7          MS. HOFFMAN:  And then the amount -- number

8   two now would be the amount defendant paid to plaintiff

9   is $50,000; and number three, a balance owed to

10  plaintiff is $451,500, and then we don't --

11         THE COURT:  Hold on a minute.  So you want

12  that to read:  First you must determine certain amounts.

13  You want me to change that --

14         MS. HOFFMAN:  The parties --

15         THE COURT:  Parties stipulate that --

16         MS. HOFFMAN:  Small "i" would say the amount

17  the plaintiffs paid to defendant is 501 five.

18         THE COURT:  Yes.

19         MS. HOFFMAN:  Small ii, the amount defendant

20  paid to plaintiff is $50,000.

21         THE COURT:  Yes.

22         MS. HOFFMAN:  Small iii, the balance owed to

23  plaintiff is $451,500.  There is no four and there is no

24  longer a V.

25         THE COURT:  That's of course if they find

                Lisa L. Tennyson, CSR, RMR, FCRR
              UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1  liability.

2          MS. HOFFMAN:  That's right, but if they find

3  liability, we made that easy.  It's solely in the

4  damages section, your Honor, obviously.

5          MR. LECOURS:  Your Honor, could we have one

6  second to consider that?

7          (Pause in proceeding)

8          MR. LECOURS:  Your Honor, our concern is any

9  statement that the parties stipulated to an amount of

10  damages.  Something characterized as damages would serve

11  to prejudice the jury in favor of finding liability.

12  That's our concern.

13          THE COURT:  I always tell the jury that my

14  instruction to them on the law of damages is not to be

15  taken as an indication that they should find for the

16  plaintiff.  If and only if they find for the plaintiff

17  will they award damages.  I will tell them if you find

18  for the defendant, then there will be no damages.  If

19  you find for the plaintiff, the parties have stipulated

20  this is the amount.

21          I mean, that's always a concern for defense

22  counsel in every case, even when there's no stipulation,

23  and I don't think a stipulation gives rise to an

24  inference that they should give damages, and I will beef

25  up my language there and say the stipulation on these

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

figures is in no way to be taken by you that you should find for the plaintiff. This is done for your ease with respect to all of the numbers that you have heard. I think I can take care of that, if that's your concern.

MR. LECOURS: And the other -- the only other concern I have is instead of saying -- we stipulate to the numbers that he paid and that he was -- that was remitted to him, to plaintiff, but I don't know that we want to -- we want the jury to do that math, that subtraction to determine damages because -- we can say the parties agree as to those two figures. They don't -- they don't agree as to what they signify.

THE COURT: Okay. So I can't have a stipulation. That's fine. I understand. I can at least tell them the amount that the plaintiff paid to the defendant was 501500, the amount of the contract was 723559, plus or minus 38,500 for the paint. But then if you're not willing to stipulate, I can't force you. But what does paragraph B say? Because right now paragraph B makes no sense.

MR. LECOURS: I think we agree that that paragraph can't remain.

THE COURT: What do you want paragraph B to say?

MR. LECOURS: I think we need -- well, to the

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1  extent the Court's inclined to charge mitigation, that
2  mitigation would be subtracted from whatever the -- from
3  that math exercise of subtracting the 501500 that --
4  that plaintiff paid, subtracting the 50,000 that we
5  agree was remitted, and then that gives you 451 five,
6  which we agree that that's the result of that math, and
7  then the jury should decide, we believe, what amount of
8  mitigation was proven, if any, and --
9          THE COURT:  I'm not -- you know, you did not
10  prove mitigation.  You just didn't.  So, it comes back
11  to the fact that you agree that if they find for the
12  plaintiff that the amount is 451500, but you don't want
13  to stipulate to that.
14          MR. LECOURS:  If Your Honor wants to instruct
15  it as the number should be, if it goes to the parties
16  agree, I think we are -- we're -- I will talk to you --
17          (Pause in proceeding.)
18          MR. LECOURS:  Can you give me one second, your
19  Honor?
20          THE COURT:  Sure.
21          (Pause in proceeding.)
22          MR. HALLAK:  Your Honor, instead of having
23  a -- a -- a directive as to what the number is in the
24  event that the plaintiff prevails, we would prefer that
25  that number be decided by the jury.  So we would ask

              Lisa L. Tennyson, CSR, RMR, FCRR
              UNITED STATES DISTRICT COURT - NDNY

24

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    that the Court not take an affirmative directive, that

2    if the verdict were in favor of the plaintiff, that the

3    damage number has to be a particular number.  But we

4    would ask that the jury be permitted to render their

5    decision on that.

6                THE COURT:  Going back on paragraph 2, breach

7    of contract, say to the jury, first you must determine

8    certain amounts.  I instruct you that the contract price

9    was $723,559.  The plaintiff claims that the cost of the

10   paint -- $38,500 -- was included in the contract.  The

11   defendants claim that the cost of the paint was not

12   included in the contract and included an additional

13   payment of $38,500.

14               I instruct you that the amount that the

15   plaintiff paid to the defendant was $501,500.  I

16   instruct you that the defendant has remitted or given to

17   the plaintiff $50,000.

18               MS. HOFFMAN:  Then if we are going to do that,

19   and that's what they would like to do, then I think what

20   we have to do is provide the jury with all the amounts

21   that the defendant received on this contract, because

22   the defendant received -- and all of this is an

23   exhibit -- they received 75,000.

24               THE COURT:  Please.  I know -- don't -- I know

25   the number you claimed in your trial brief that they

                    Lisa L. Tennyson, CSR, RMR, FCRR
                 UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    received.  I'm trying to simplify this for the jury.

2            MS. HOFFMAN:  I thought we were, Judge.

3            THE COURT:  I don't think we are.

4            MS. HOFFMAN:  That isn't something we can

5    stipulate to, then we have to show the jury that they

6    received 876 five and they stipulate to that, and that

7    the contract price is 723559.  So even if the jury

8    doesn't find for the -- for the plaintiff, the defendant

9    has excess proceeds of, on our math, of 102941, and if

10   the paint isn't included, their math, 64,441.

11           THE COURT:  That's going to be real easy for

12   the jury.  So you're saying that you want me to tell the

13   jury that the defendant received $876,500; that the

14   contract price was 723559 plus or minus paint; that the

15   plaintiff paid 501500; that the defendant remitted

16   $50,000 back to the plaintiff.  That's what you want.

17           MS. HOFFMAN:  I think we have to stipulate at

18   least to the excess proceeds.  They -- that's -- they

19   agree to that.  I don't know why they also don't agree

20   that the contract damages are what they are, but they

21   have to concede that they have the excess proceeds.

22           THE COURT:  I don't know what that has to do

23   with this case at this point.  What's your position?

24           MR. LECOURS:  Your Honor, we don't believe

25   there's any basis to instruct the jury as to amounts

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   received in after the boat was rejected.  I don't think

2   there's any basis for a verdict in damages that's over

3   the amount Mr. Salamone paid minus the amount he was

4   paid back.

5          THE COURT:  You know what?  You can go through

6   whatever numbers you want during your summation.  I'm

7   going to tell the jury that the contract price was

8   723559 plus or minus 38,500, that the plaintiff paid

9   $501,500, and that the defendant remitted $50,000.

10  Period.  End of story.

11         You can dazzle them with your numbers in your

12  summation.  Okay?

13         Let's talk about the jury instructions.

14         Are there any objections to the jury

15  instructions as I have given you and as we amended right

16  now on that paragraph regarding damages?

17         MR. LECOURS:  From the defendant?

18         THE COURT:  From the plaintiff.  Are there any

19  objections to the proposed charge?  Other than how we

20  have just amended what I'm going to tell the jury under

21  the law of damages.

22         MS. HOFFMAN:  Judge, I just wanted to be

23  certain that paragraph B is stricken in 2 and the breach

24  of contract damages.  Was that something that --

25         THE COURT:  Paragraph C?

          Lisa L. Tennyson, CSR, RMR, FCRR
          UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1      MS. HOFFMAN:  I'm sorry.  B, your Honor.  B as

2  in boy, under 2.  So it would be page 16, 2-B, as in

3  boy, that the defendants ask or concede that that

4  paragraph be stricken.

5      THE COURT:  I'm sorry.  Under B-2 on page 16,

6  B as in boy, I have breach of contract damages.  I can't

7  strike that.

8      MS. HOFFMAN:  Sorry, your Honor, and then

9  underneath that is -- is B.  So it's B-2-B.  That

10 highlighted paragraph that started is a little bit

11 clunky.  Is that --

12     THE COURT:  Read to me what you want me to

13 strike.

14     MS. HOFFMAN:  From the amount the plaintiff

15 paid to defendant, you must subtract the contract price

16 and you must also subtract the expenses plaintiff --

17     THE COURT:  I'm going to strike that.  That

18 makes no senses whatever.

19     MS. HOFFMAN:  Thank you.  With that, your

20 Honor, then the balance of that -- continuing on to page

21 17 is fine for the plaintiff.

22     THE COURT:  All right.  Do you have -- so

23 other than striking that language, do you have any

24 objections to the proposed jury instructions?

25     MR. LITTLE:  I only have one comment, your

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1   Honor.

2           THE COURT:  Do you have any objection?  I'm

3   asking if you have an objection.  Tell me.  Preserve the

4   record.

5           MR. LITTLE:  My objection is on page 15, first

6   full paragraph.  The charge instructs the jury that if

7   you determine plaintiff did not waive the right under

8   the contract, after the waiver provision, the waiver

9   instruction and the Skater was actually tendered,

10  plaintiffs were entitled to reject the Skater.

11          From there on, I think it talks about the

12  reasonable time standard, but I think that the proof at

13  trial both asserts that the Skater and the contract

14  themselves were rejected.

15          The conclusion I don't think matters, your

16  Honor, but I think that the -- the Skater wouldn't have

17  to have been tendered for plaintiff to reject the

18  contract if the delivery wasn't reasonable, and it's

19  also true that this -- that the plaintiff would have

20  had the right to reject the Skater itself if it were

21  tendered.

22          So the objection is that I don't believe it

23  mattered whether the Skater was or wasn't tendered.  If

24  plaintiff rejected both the contract and the Skater,

25  then the only question is really reasonable time.

            Lisa L. Tennyson, CSR, RMR, FCRR
        UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1          THE COURT:  I note your objection, but I'm
2    going to give that charge to the jury as I believe that
3    from Michigan law that I have consulted and the issues
4    involved in the case that, as I have prepared it, it is
5    accurate, and hopefully in a language that the jury will
6    follow.  Any other objections?
7          MS. HOFFMAN:  No, your Honor.
8          THE COURT:  Any objections from the defense to
9    the proposed charge?
10         MR. HALLAK:  Yes, your Honor.  We have one
11   word.  On page 11, second line down, the contract was
12   properly canceled due to plaintiffs' rightful rejection.
13   The word "rightful" there, I think it's a little bit
14   suggestive.  On page 10, four lines up from the bottom,
15   you say plaintiffs' claim at that point they rightfully
16   rejected the Skater.  I think the word "rightful" on the
17   second line of page 11 is a little suggestive, and we
18   would ask that that one word be removed.
19         THE COURT:  All right.  That request is
20   denied.  Anything else?
21         MR. HALLAK:  Nothing further, your Honor, on
22   the jury instructions.
23         THE COURT:  Let's look at the jury verdict
24   form.  Now, I take it plaintiffs have an objection to my
25   dismissal of the conversion and fraud?

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

—SALAMONE v DOUGLAS MARINE - 19-cv-1213—

1           MS. HOFFMAN:  We do, your Honor.

2           MR. LITTLE:  We do, your Honor.

3           THE COURT:  So when we look at the verdict

4   sheet, obviously there are no questions on conversion

5   and fraud, but I am noting for the record that you have

6   an objection to the dismissal of the conversion and the

7   fraud claims.

8           MR. LITTLE:  That's correct.  They do, your

9   Honor.

10          THE COURT:  Okay.  So, with that in mind, does

11  the plaintiff have any objection to the proposed jury

12  verdict form?

13          MS. HOFFMAN:  Sorry.

14          MR. LITTLE:  While Ms. Hoffman is looking,

15  your Honor, I just would like to note the same objection

16  with the instruction difference between tendered

17  delivery either -- tender of delivery was required for

18  the installation of the contract and/or whether there's

19  any difference.  The jury verdict form is in the same

20  form as the instructions, so I just like to make that

21  same objection.

22          THE COURT:  Your objection is noted.

23          MR. LITTLE:  Thank you.

24          THE COURT:  Any other objections to the jury

25  verdict form from the plaintiff?

                Lisa L. Tennyson, CSR, RMR, FCRR
                UNITED STATES DISTRICT COURT - NDNY

1          MS. HOFFMAN:  Judge, if we could have a couple

2    of quick minutes.  We were going through that when you

3    came out.  So I don't intend to be long.  Your Honor, we

4    were trying to work into 1-G the math that we had -- had

5    worked on in -- in the several minutes before this to

6    try and provide the jury with a way to look at --

7          THE COURT:  The defendants won't consent to

8    that, so I'm going to instruct them in my verbal

9    instruction that the agreed-upon contract price was

10   723559, plus or minus 38 five, that the plaintiff paid

11   $501,500, and that he was remitted by the defendant

12   50,000.  I'm not going to plug in any numbers because

13   the defense won't consent to it, and that's their right.

14         MS. HOFFMAN:  And I'm sorry.  I -- so is that

15   not -- that information is going into the -- into what

16   you're reading ?

17         THE COURT:  I'm going to verbally read that to

18   the jury.

19         MS. HOFFMAN:  And are we -- are we indicating

20   that we can't put that information in?

21         THE COURT:  I'm not putting it on the verdict

22   sheet.  No.  I'm going to tell them those amounts.  And

23   I send a copy of my written instructions into the jury

24   room for them.

25         MS. HOFFMAN:  Thank you, your Honor.  I didn't

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   know for certain.

2           THE COURT:  Any objections, Counsel?

3           MS. HOFFMAN:  With that understanding, Judge,

4   no, I think that this will be sufficient.

5           THE COURT:  Does the defense have any

6   objections to the verdict sheet?

7           MR. HALLAK:  We have just one and I think it

8   was an unintended drafting thing.  In paragraph 1-D it

9   says has the defendant proved by a preponderance of the

10  evidence that plaintiffs waived the right to insist on

11  tender the Skater prior to June 27, 2017, and then it

12  says if you answer yes, please proceed to question 1-E;

13  if you answer no, please -- your deliberation are

14  complete.

15          I think if you answer yes, has defendant

16  proved by a preponderance of the evidence, then your

17  deliberations are complete, and then if you answer no,

18  then you continue to go on with the form.  So I think

19  that was just a drafting mistake there.

20          MS. HOFFMAN:  He's right.

21          THE COURT:  All right.  I'll take a look at

22  that more closely in a minute.  Other than that,

23  anything?

24          MR. HALLAK:  Nothing from defense.  Thank you.

25          THE COURT:  Okay.  Because in the written

              Lisa L. Tennyson, CSR, RMR, FCRR
              UNITED STATES DISTRICT COURT - NDNY

1  instructions that I'm giving to the jury, we have made

2  changes on the damage section on page 16, and I've

3  stricken Roman numeral IV, I'm just going to give the

4  jury the general instruction on breach of contract, and

5  my law clerk is handing you a copy of that.

6          MS. HOFFMAN:  Your Honor, we anticipate this

7  to be a -- just a sheet of paper that goes in or is that

8  going to be melded in here or --

9          THE COURT:  What I'm going to do is -- if you

10  look at page 16, I will tell them first you must

11  determine certain amounts.  The parties have stipulated

12  that, however, that the amount plaintiff paid to the

13  defendant was 501500.  The parties have -- I'll say

14  agreed, okay?  Not stipulated.  The parties have agreed

15  that the contract price was 723559 plus or minus

16  38 five.

17          The parties have agreed that the defendant

18  remitted to the plaintiff $50,000, and then give the

19  general contract charge that I've just handed out to

20  you.

21          MS. HOFFMAN:  I wanted to make sure you guys

22  had an opportunity.

23          MR. LECOURS:  Yes.

24          MS. HOFFMAN:  That the language at the

25  conclusion of paragraph 3 indicates additionally, the

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    plaintiffs still owed money to defendant on the agreed

2    contract price.  That amount should not be included in

3    any damages award.  The defendants received the balance

4    of that contract price from Mr. Sheker.  So it never --

5    they never made a claim for us against us in this case

6    for the balance of that money.  So that that instruction

7    can't be in.

8         THE COURT:  Your client can't recover twice.

9         MS. HOFFMAN:  Absolutely not.  I'm not

10   indicating in any way that we would recover twice.

11   Absolutely not.  It says additionally, if plaintiffs

12   still owed money to defendant -- we did -- on that

13   agreed contract, that amount should not be included in

14   any damages award.  I just wanted --

15        THE COURT:  That's correct.

16        MS. HOFFMAN:  -- certain that we're not

17   indicating that it's a -- it's a balance that he owes.

18        THE COURT:  That is the correct charge that

19   must be given to the jury.  Any other objections,

20   Ms. Hoffman, to the routine contract language?

21        MS. HOFFMAN:  So, Judge, is this final

22   paragraph in fixing the amount of damages -- this I

23   think relates to the mitigation, which I thought you had

24   struck.

25        THE COURT:  In fixing the amount of damages,

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   you should not include any loss that plaintiffs could
2   have prevented by exercising reasonable care and
3   diligence when they learned of the breach.  Yeah, I'm
4   not going to charge mitigation.  So, yes.
5           MS. HOFFMAN:  Thank you.
6           THE COURT:  That will come out.
7           MS. HOFFMAN:  Nothing further then, your
8   Honor.
9           THE COURT:  Any objection from the defense on
10   the general proposed contract charge?
11           MR. HALLAK:  We will -- we would like to just
12   preserve for the record our objection regarding the
13   mitigation charge that Your Honor said we are not going
14   to give.  Just for the record, we understand your
15   ruling.
16           We have one requested addition to that, and
17   that is in the second to last paragraph on this page
18   where it says in making this determination, you must
19   determine the contract price, the amounts paid to
20   defendant.  Right there we would like the addition the
21   amounts returned to plaintiff, and then continue on with
22   the --
23           THE COURT:  So the amount remitted.  You're
24   talking about 50,000?
25           MR. HALLAK:  That's correct, your Honor.

                Lisa L. Tennyson, CSR, RMR, FCRR
                UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1      THE COURT:  I think that's reasonable because
2  I say that all throughout.
3      MS. HOFFMAN:  Yes, and I don't disagree.
4  That's fine.
5      THE COURT:  Remitted by the defendant.  Okay.
6  So take ten minutes, and we'll sum up.  Okay?  I have to
7  make some changes on this.  I will be back in ten
8  minutes.
9      (Following recess, 9:45 a.m.)
10      THE COURT:  Who is summing up for the defense?
11      MR. LECOURS:  I am, your Honor.
12      THE COURT:  Make sure -- about how long -- I'm
13  not going to take a hook and take you off the stage but
14  about how long do you think you're going to be?
15      MR. LECOURS:  In practice, it was about 20 to
16  25 minutes.
17      THE COURT:  Okay.
18      MR. LECOURS:  It might go a little slower with
19  exhibits and the speed.
20      THE COURT:  Who is summing up for the
21  plaintiff?
22      MR. LITTLE:  I am, your Honor.
23      THE COURT:  Mr. Little, I'm going to tell you
24  something.  You're very hard to understand.  It's
25  probably the mask.  So you need to have that microphone

               Lisa L. Tennyson, CSR, RMR, FCRR
              UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1  next to your lips, and you need to go slowly.  How long

2  do you think your summation will be?

3           MR. LITTLE:  Around 20 minutes or so, your

4  Honor, as well.

5           THE COURT:  Okay.  Let's get the jury please.

6           (Jurors present)

7           THE COURT:  Good morning, folks.  Thank you

8  for your patience.  We have been ironing out all of the

9  legal matters that we have to take care of before the

10  case is ready for summation.  It took awhile but we are

11  at that point now where the attorneys are ready to

12  deliver their summations where they will summarize for

13  you what they believe they have proven, and as I said

14  yesterday, the defense goes first.  So I will recognize

15  the defense.

16           MR. LECOURS:  Thank you, your Honor.  May it

17  please the Court, ladies and gentlemen of the jury, good

18  morning.  I want to first extend my sincere thank you on

19  behalf of Douglas Marine.  You've taken the time to

20  serve in person on a jury in the middle of a pandemic,

21  and that's really a remarkable thing, and we're very

22  appreciative and grateful you've taken the time out of

23  your lives to fulfill this very important duty.

24           You've served your duty and gave us your

25  undivided attention and patience over the past several

1    days, and we trust you to determine the facts in this

2    case, and again sincerely thank you.

3              My name is Dan Lecours, and I represent

4    Douglas Marine with my colleague, Elliot Hallak.

5    Douglas Marine made this very unique boat for Ken

6    Salamone, just the way he wanted it.  He should have

7    taken the boat.  He was obligated to take the boat but,

8    instead, once he had Douglas Marine do all the work, he

9    stranded them with the boat, and after he backed out of

10   the deal, all the work was done, he now has the nerve to

11   sue Douglas Marine, saying that somehow Douglas Marine

12   did something wrong.  Somehow they breached the

13   contract.

14             Now, he didn't just harm Douglas Marine.  He

15   put himself before his own friend, Jason Saris.  He cut

16   Mr. Salamone out of any commissions so he could save

17   himself money by calling Douglas Marine direct, and then

18   he never paid Mr. Saris a nickle for all the hours that

19   he testified he put in helping Mr. Salamone.  This is a

20   guy who cares about himself with no consideration as to

21   impact his actions have on everyone else.

22             On Monday, my colleague, Mr. Hallak, delivered

23   an opening statement to you, and he told you what his

24   expectation was as to what the evidence in this case

25   would show.

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1        Now, several days later, all of the evidence
2   in this case has been submitted, and what Mr. Hallak
3   told you would be proven has been proven.  Let's recap
4   what he said and what the evidence has now shown.
5        So, first, Mr. Hallak told you that
6   Mr. Salamone would not be able to show you a single
7   written letter, text, or email where he complained to
8   Douglas Marine about anything before he rejected
9   delivery of the boat.  There's no evidence of that.
10  They didn't show it to you.  Mr. Salamone didn't even
11  testify that he ever complained about anything before.
12       He asked -- Mr. Hallak asked Mr. Salamone
13  to -- point blank to identify what if anything remained
14  to be completed by Douglas Marine as of the date he
15  rejected the boat.  You heard him.  He couldn't think of
16  anything.  There was nothing.
17       Just like Mr. Cutsuries and Mr. Hledin told
18  you, as of June 27th, 2017, the only task that needed to
19  be completed on the boat was the rigging, and it is
20  undisputed that Jason Saris, not Douglas Marine, was
21  supposed to do the rigging.  That was the initial deal.
22  It was never changed.
23       Mr. Hallak also told you that Mr. Salamone was
24  informed at the outset about the importance of selecting
25  his engines.  Well, that's been confirmed as well.  You

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1   saw Mr. Saris' email to Mr. Salamone in January 2016

2   telling him, quote, engines should be started on now so

3   as not to be a holdup later.  That was in January 2016.

4            That was weeks after the contract was entered,

5   that was right around the time when the boat was -- the

6   beginning -- the construction was beginning.

7            Mr. Salamon knew virtually from day one that

8   he needed to act quickly.  He needed to pick his

9   engines.  But he failed to do that.  He couldn't make up

10  his mind.  Mr. Hallak told you that Mr. Salamone was

11  excited in 2017 when he received pictures of the painted

12  boat.  This has been confirmed as well.

13           You saw Mr. Salamone's text messages in

14  February 2017.  He was very excited.  Texted awesome.

15  Unbelievable.  Superb.  Mr. Salamone himself confirmed

16  that he was still very much interested in the boat at

17  that point.

18           Mr. Hallak also told you that Mr. Salamone

19  changed the terms of the deal by asking for the engines

20  to be purchased by Douglas Marine, and that's true as

21  well.  Every witness, including Mr. Salamone, confirmed

22  that the engines were not included in the initial deal.

23  If Mr. Salamone wanted the boat and was going to supply

24  his own engines as was provided for in the original --

25  original contract, he could have picked the boat up the

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   minute the painting was completed, that's February 2017,

2   and you heard that confirmed by Douglas Marine's two

3   witnesses.

4          Mr. Hallak told you that Mr. Salamone did not

5   decide on the engines he wanted until 14 months after

6   the contract was entered.  14 months.  That's true as

7   well.  It's undisputed.  You heard from Mr. Salamone and

8   Jason Saris about all the different engines that

9   Mr. Salamone considered.

10          The parties have agreed to these facts.  They

11  are stipulated.  You will see these facts in evidence.

12  You can review them.  He considered the 850 Mercury

13  engines, and then there was thoughts about Mr. Saris

14  building engines for him, and then you recall the

15  testimony about potentially using engines for a class of

16  racing that no longer existed but their hopes, based on

17  rumors, that that class would be resurrected.  None of

18  that happened.  14 months passed and then he finally

19  selected the 700s.  The Mercury 700 engines.

20          Jason Saris further testified that

21  Mr. Salamone was hoping to convince the sanctioning body

22  for offshore racing to resurrect the old class.  So he

23  was hoping.  He was hoping.  He was hoping for

24  14 months.  The end of the day, Mr. Salamone admitted to

25  you that he wanted to buy the Mercury 700s essentially

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1   as placeholders that he could take out and sell when he

2   could decide on real racing, and he didn't make that

3   decision until February 2017.

4           Very little if any of this was communicated to

5   Douglas Marine in real time.  They learned what

6   Mr. Salamone wanted in February 2017 when the painting

7   was finished.  Mr. Hallak told you that.  Once

8   Mr. Salamone made up his mind on the engines, Douglas

9   Marine promptly ordered and received them from Mercury,

10  and they got to work making the necessary modifications

11  to the boat.

12          This has been confirmed as well.  This is

13  shown by documents.  It's undisputed.  Let's --

14  Ms. Norton, can we show the jury J17.

15          This is the invoice Mr. Cutsuries used to

16  order the Mercury engines, Mercury 700s dated March 1st,

17  2017.  You can see in the "Date Wanted" field it says

18  ASAP.  They ordered them as soon as he knew what engines

19  Mr. Salamone wanted.

20          Now, this is even before the $140,000 that

21  Douglas Marine requested from Mr. Salamone to cover the

22  added costs even hit Douglas Marine's accounts.

23          Change to J16.  See this email?  J16.

24          March 2nd, 2017.  Mr. Salamone states that the

25  wire request was completed.  Douglas Marine didn't wait.

1   They went ahead as soon as they had the information they

2   needed.  They ordered engines.  They got to work.

3           Mr. Cutsuries also told you that once the

4   engines arrived or that the engines arrived on -- around

5   March 14, 2017, and once they got there, Douglas Marine

6   got to work.  They got to work finishing the boat.

7           Mr. Hledin explained in very -- in a lot of

8   detail, some of which I didn't understand, that the work

9   that Douglas Marine did in March, April and May to

10  finish their responsibilities under the contract and

11  complete the boat.

12          They had to modify the hatches and scoops.

13  You remember the pictures that Mr. Cutsuries circled.

14  They had to do all that work.  This was all done after

15  the boat was painted.  They needed to repaint those

16  parts that were affected.  This was -- as Mr. Hledin

17  testified, this was time-consuming work.

18          They finished this work.  They weren't

19  required to do the rigging work.  Everyone agrees that

20  was Mr. Saris' job.  Mr. Hallak also told you in his

21  opening statement that the boat was finished in the

22  beginning of June 2017, despite the suggestions by

23  Mr. Salamone that there were still three months of

24  rigging work to do.  Rigging work that was supposed to

25  be done by Mr. Saris.

                Lisa L. Tennyson, CSR, RMR, FCRR
              UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1          The evidence indicates that the boat was done.
2    You heard Mr. Salamone assert his testimony when asked
3    what was not completed at the time you rejected
4    delivery?  The only thing he can think of was that he
5    was not provided a final invoice.  He could not think of
6    anything else.  Nothing else.
7          You saw an invoice that was sent to him on
8    June 12th, 2017.  That invoice -- the only thing that's
9    missing from it, the only thing missing from that
10   invoice was the paint.  The paint that he ordered, the
11   $38,500 custom paint job that he ordered is the only
12   thing missing on the invoice.
13         Douglas Marine was asking Mr. Salamone, an
14   experience businessman, pay your invoice, pick up your
15   boat.
16         You saw that that invoice was mailed to
17   Mr. Salamone's Connecticut address that he provided to
18   Douglas Marine to use in connection with this contract.
19   Now ask yourself:  Is it strange that Mr. Salamone says
20   he received certain communications in this case that
21   were sent to that Connecticut address, the ones that
22   help his case, but he says he didn't receive the ones
23   that don't help this case?
24         You decide.  That's the issues for you to
25   decide.

                    Lisa L. Tennyson, CSR, RMR, FCRR
                  UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1          You also saw the pictures of the completed
2     boat that Mr. Cutsuries emailed to Mr. Salamone.
3          Show the jury J23.
4          These were emailed on June 27th, 2017, at 9:44
5     in the morning.  The boat is sitting on its trailer in
6     the parking lot waiting to be picked up.  Now you heard
7     a lot of testimony about the completion of the boat.
8     But pictures -- 23 pages of pictures -- you can review
9     these exhibits, 23 pages of pictures are really worth a
10    thousand words.
11         The boat is done.  Mr. Hallak was right in his
12    opening statement.  Mr. Salamone just didn't want it
13    anymore.  Mr. Hallak then told you about the only
14    significant event that occurred between the date
15    Mr. Salamone finally selected his engines and the date
16    he refused delivery.  He told you that the real reason
17    Mr. Salamone rejected the delivery of the boat was the
18    tragic death of his friend.  His friend died in a boat
19    race May 21, 2017.  That's undisputed.
20         You have now seen the witnesses.  You have
21    heard the testimony.  You saw Mr. Salamone.  You decide.
22    In my view, it's pretty clear what happened.  You saw
23    how emotional it was for Mr. Salamone to recount the
24    events that occurred that day.
25         It's now four years later.  Just imagine how

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    emotional Mr. Salamone was just weeks -- just weeks
2    after it happened.
3            And Mr. Salamone also confirmed all of the
4    details that Mr. Hallak stated in his opening statement.
5    Mr. Raabe was someone that Mr. Salamone had gone to
6    dinner with the night before the race.  He was a mentor
7    to his son.  Mr. Salamone's boat had passed Mr. Raabe's
8    boat in the race just seconds before he was killed.
9            He saw the rescue team washing what he thinks
10   was his friend's blood off the back of the boat.  The
11   entire race was canceled after the accident.
12           The mother of his son and racing partner, EJ,
13   told him that she was concerned for her son's safety
14   after the accident, and Mr. Salamone took the entirety
15   of the 2017 season off from racing.  And now if there
16   are any doubts, if there were any doubt as to what
17   occurred, and I submit that there wasn't, this doubt was
18   removed when Mr. Salamone confessed and apologized to
19   Mr. Cutsuries and Mr. Hledin when he visited Douglas
20   Marine a year later.
21           He told them this is his first visit, first
22   visit ever to Douglas Marine.  He told them why he
23   really rejected the boat.  He got emotional in front of
24   them, just like he got emotional in front of you.  We
25   ask you to use your common sense in determining what

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    happened here.

2           Mr. Hallak also told you that Mr. Salamone

3    consented to the sale of the boat, including engines and

4    drives.   This is undisputed.

5           You saw his June 29, 2017, email.   Then that

6    same day, Douglas Marine listed the boat for sale.   The

7    listing stated that the boat was available, quote, with

8    or without drives.

9           You saw the letter from Mr. Salamone's

10   attorney, the attorney he got involved in June 2017 at

11   the direction -- at his own direction.   That letter

12   acknowledged that Mr. Salamone still owed Douglas Marine

13   $222,000 under the contract.   It also stated that he was

14   pleased to see the ads for the boat.   Mr. Salamone also

15   said he was willing to absorb certain costs a potential

16   buyer on a different paint on the boat.

17          Mr. Hallak asked you to think about what the

18   letter doesn't say and that's important.   Doesn't say he

19   breached the contract, doesn't talk about work that

20   allegedly needed to be completed by Douglas Marine.   And

21   this is from a well-educated man who buys businesses for

22   a living.   Just think about that.

23          Is this really how Mr. Salamone would act if

24   he thought he were in the right in denying the boat?

25   Why would he offer to absorb costs and not simply demand

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   a refund?

2           Why would he care at all about how the boat

3   was listed or for what amount?  Wouldn't he just say

4   that's your problem?

5           Mr. Hallak told you also about all the

6   difficulties Douglas Marine had finding a buyer.  Again,

7   this was a custom race boat that was built to

8   Mr. Salamone's exacting specifications.  You saw the

9   pictures of the boat.  The blue and yellow or orange

10  boat.  Douglas Marine did not receive a single

11  expression of interest in the boat until nearly nine

12  months after it was listed.

13          Then you heard about the first potential

14  interested buyer, Danny DeSantis.  Douglas Marine made

15  the mistake of letting Mr. Salamone speak to him.

16          Mr. Salamone decided it would be a good idea

17  to tell Mr. DeSantis that he was considering a lawsuit

18  against Douglas Marine and, predictably, that spooked

19  him and he didn't have the time or patience for that.

20  He didn't want to make -- he didn't want to get mixed up

21  in a lawsuit.  I think we can all understand that.

22          Then in March 2018 Mr. Sheker called Douglas

23  Marine and they reached a deal.  Douglas Marine agreed

24  to sell the boat with the drives and transoms, but not

25  the motors, for $300,000 if and only if Douglas Marine

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1  would agree to rig the engines at a significantly

2  reduced cost.

3        Although Mr. Sheker could afford the initial

4  payments, the payment for the rigging was beyond his

5  capabilities and took him to around the time this

6  lawsuit was filed to make the final payment.  He bounced

7  a check to them.  Douglas Marine even had to accept

8  credit for some landscaping work that he did for them.

9        Douglas Marine didn't want the same thing to

10  happen with Mr. DeSantis to happen again with

11  Mr. Sheker.  Mr. Cutsuries told you that one of his

12  concerns about telling Mr. Salamone about the deal was

13  just that.  Douglas Marine knew from experience that the

14  deal was not final, was not final until it was paid in

15  full, and Mr. Sheker hadn't done that.

16        They didn't want to get stuck holding the bag

17  again.  They didn't want to get stuck with this boat for

18  a second time.

19        And the lawyers were already involved in this

20  point.  They had been involved back in June of 2017.

21  You also saw letters exchanged by attorneys in

22  November 2017.  You can look at them when you are back

23  in the jury room; those are J32, J46.  You saw that

24  earlier letter from Mr. Salamone's attorney, J28, that's

25  the June 29th letter.

                  Lisa L. Tennyson, CSR, RMR, FCRR
                UNITED STATES DISTRICT COURT - NDNY

1       At that -- so at this point, in the spring of

2   2018 -- or 2018 Mr. Salamone had already threatened

3   litigation and to bankrupt Douglas Marine.

4       Douglas Marine had nothing to gain at this

5   point by sharing freely information with Mr. Salamone.

6   Put yourself in Mr. Cutsuries' position.  He was dealing

7   with a customer and Mr. Salamone, who hurled insults at

8   him, threatened to bankrupt Douglas Marine, he

9   threatened a lawsuit.  He directed his attorneys to

10  write multiple letters to the company.  Would you

11  respond to his text messages?  I wouldn't.

12      As they explained, they were waiting for

13  Mr. Sheker to pay the balance due.  They had already

14  given him the $50,000 from the sale of the motors as a

15  good faith payment.  Douglas Marine was sued before they

16  could balance their accounts.  They were sued before

17  Mr. Sheker made his final payment.  That's why we're

18  here.

19      Now let's talk about the steps that Douglas

20  Marine took and the costs it incurred after Mr. Salamone

21  rejected the boat.

22      Douglas Marine, as you saw, tried to sell the

23  boat right away.  You saw their letter, and even though

24  they didn't need to, they sought Mr. Salamone's consent

25  for the sale, and you saw his email expressly stating in

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   one sentence his consent.

2           Then Mr. Cutsuries listed the boat.  You saw

3   that listing on powerboat listings that they had to pay

4   for.  That indicated that the boat was for sale with or

5   without engines.  You saw that too.

6           Then Mr. Salamone's attorney sent a letter

7   acknowledging that Mr. Salamone still owed Douglas

8   Marine over $222,000.  That amount did not include the

9   custom painting that was done.  You heard Mr. Cutsuries'

10  testimony that he forgot to list that work on the

11  invoice.

12          The painting was obviously done.  You saw the

13  boat in the ad on June 29th, 2017.  You saw that in --

14  Mr. Hallak showed you during his opening statement.

15  That invoice for $38,500 was subsequently sent to

16  Mr. Salamone.  Mr. Salamone also acknowledged that he

17  was pleased with the online listings.

18          Douglas Marine also had to store the boat.

19  Mr. Cutsuries testified that Douglas Marine invoiced

20  Mr. Salamone for these costs.  $280 per month for

21  several months.  Then Douglas Marine needed to arrange

22  for winter storage.  They didn't have room.  They

23  contracted with another company and paid them $3,671.84.

24  So that -- all told for storage, that's $4,511.84.

25  Storage for a boat that was ready to be picked up,

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    sitting on the parking lot in its trailer.

2            Mr. Cutsuries told you how hard it is to

3    resell a custom boat; Mr. Hledin told you that as well.

4    Anyone willing to spend that much money on a boat wants

5    to make the customizations themselves.  That's

6    particularly true on a race boat.  You've heard in the

7    testimony in this case what happens when there's an

8    accident in racing.  These owners need to get these

9    specifications right.

10           Finally, we talked about the agreement with

11   Mr. Sheker, how he would pay 300,000 for the boat

12   without motors but required that Douglas Marine rig the

13   boat at dramatically reduced cost.  Mr. Hledin testified

14   that if Douglas Marine had charged Mr. Sheker the full

15   cost for the rigging work, it would have cost around

16   $120,000.  But, instead, they only charged him $46,000.

17   You saw the invoice.  It is the invoice that the

18   plaintiff didn't want to show to Mr. Cutsuries; I had to

19   do that.

20           So after subtracting the -- Mr. Hledin told

21   you that the full cost of the rigging work would have

22   cost him $120,000 but he only charged the $46,000.  So

23   he lost $76,000 on that deal.

24           Understandably, Mr. Salamone wants you to

25   focus your attention on the events that took place after

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1  he rejected the boat.  He wants you to focus all your

2  attention on the efforts to sell the boat in Douglas

3  Marine's communications with him at that time, after he

4  threatened lawsuits, after he hired an attorney.

5          However, it's important that you remember the

6  timeline.  All this is after Mr. Salamone refused

7  delivery.  It's not relevant to determining whether

8  Mr. Salamone's decision to reject delivery was

9  reasonable or not.

10          That's the key question you will be asked to

11  decide here.  It's very important.  The key question is:

12  Was he justified in rejecting delivery of the boat?  If

13  the answer to that question is no, then the events that

14  took place after delivery was rejected have no relevance

15  whatsoever.

16          Mr. Salamone was obligated to accept and pay

17  for the custom boat he ordered.  If Mr. Salamone did not

18  have a good reason to reject the boat, he cannot

19  prevail.  You should award him zero dollars in damages

20  because he was in the wrong.

21          You heard Mr. Salamone say that the boat

22  wasn't completed, but you saw the pictures.  You saw the

23  pictures Mr. Cutsuries sent to him.  They are still on

24  your screen; J23.

25          These were sent the day -- June 27th, 2017 --

                Lisa L. Tennyson, CSR, RMR, FCRR
              UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1  when they spoke on the phone.  The boat is sitting on

2  the trailer waiting to be picked up.  Nobody's provided

3  you a good reason why Mr. Salamone rejected it.  In

4  truth, he was grieving, and he lashed out at Douglas

5  Marine.  Just use your common sense here.

6            Let me leave you with a few final thoughts.

7  You heard all the detail that went into building this

8  boat.  That's the reason Douglas Marine was recommended

9  to Mr. Salamone.  Douglas Marine perfected a design,

10  safety, and technology of these race boats.  You heard

11  about everything that needed to be done once

12  Mr. Salamone finally selected the engines that were

13  taller than anything he had previously contemplated and

14  required a lot of modification work on -- from what

15  the -- how the boat was originally constructed to

16  accommodate them.

17            There was no delay by Douglas Marine.

18  Certainly no unreasonable delay.  There was just a lot

19  of work.  It was a lot of work that needed to be done

20  based on these late decisions that Mr. Salamone didn't

21  make until February 2017.

22            Douglas Marine was willing to accommodate any

23  of the changes Mr. Salamone made but they certainly had

24  a right to expect that Mr. Salamone would pay for that

25  work and that he'd pick up his boat.

                    Lisa L. Tennyson, CSR, RMR, FCRR
                 UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1          Instead, after Douglas Marine had done
2    everything he requested, and once the boat was
3    completed, he refused to pick it up and pay for it.  You
4    saw the boat sitting in the parking lot, ready to be
5    picked up.  The suggestion that Douglas Marine somehow
6    breached the contract by doing everything Mr. Salamone
7    asked is untrue.
8          The only person who breached is Mr. Salamone,
9    when he changed his mind and refused to pick up his
10   boat.  And then after a couple months after he picked
11   out -- picked out and had Douglas Marine order engines
12   that required major modifications to the boat.
13         Put yourself in Douglas Marine's shoes.  Think
14   about what it's like to do a really big job for someone
15   and then get stiffed.  Building a boat like this is a
16   monumental task.  These things cost more than most
17   people's houses.
18         Douglas Marine is a small business Mr. Hledin
19   has run since the 1970s.  The financial impact that
20   Mr. Salamone refusing to pick up the boat and pay for
21   what he owned is a big deal for them.
22         When you go back in the jury room, the Court's
23   going to provide you with a verdict form, which is a
24   worksheet where you will put your findings, and the
25   Court will instruct you as to how to fill that form out.

                  Lisa L. Tennyson, CSR, RMR, FCRR
                 UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1           I just want to briefly talk about that form

2     before I leave you.

3           The first question you'll be asked to answer

4     is:  Did plaintiffs establish by a fair preponderance of

5     the credible evidence that plaintiff substantially

6     performed their obligations under the contract?  We

7     submit to you that the answer is no.  Mr. Salamone

8     didn't pay for the boat.  He didn't pick up the boat.

9     He didn't make his decisions in a timely manner.

10          Second question, if you get to it:  If you

11    answer the first question no, you're done.  Second

12    question:  Did plaintiffs establish a fair preponderance

13    of the evidence the defendant breached the contract by

14    failing to tender the Skater within a reasonable time?

15    The answer again is no.  They told Mr. Salamone that the

16    boat was ready by sending him an invoice as soon as they

17    reasonably could, right after the race, where his friend

18    died.

19          THE COURT:  Mr. LeCours, I'm hesitant to

20    interrupt you, but do you intend to read the entire

21    verdict sheet?  Because we have made some changes after

22    our charge conference, particularly with respect to the

23    issue that your partner raised on one of the questions,

24    and I don't believe you have the new copy yet.

25          MR. LECOURS:  I don't.  I don't, your Honor,

                    Lisa L. Tennyson, CSR, RMR, FCRR
                  UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    and I -- I am pretty much done talking about the verdict

2    form.

3              THE COURT:  I apologize.  I just wanted to

4    make sure.

5              MR. LECOURS:  And again, the Court will

6    instruct you on how to fill out the form and how to work

7    through the form, but those two questions, they are key

8    questions.

9              Plaintiff was required to prove those items

10   and they didn't prove those items.  For that reason, we

11   ask that you return a verdict in favor of Douglas

12   Marine.

13             As I stated when I began, Douglas Marine,

14   Mr. Hallak, and I truly thank you.  We thank you for

15   your patience and your service.  We ask for a verdict

16   for Douglas Marine, and we believe it's the only verdict

17   that is supported by the evidence you have heard.  Thank

18   you all for your attention.

19             THE COURT:  Thank you, sir.  I now recognize

20   plaintiffs' counsel.

21             MR. LITTLE:  Good afternoon, ladies and

22   gentlemen of the jury.  As you know by now, we represent

23   the plaintiffs, Kenneth Salamone and RUFSTR Racing, LLC.

24   We have been here a couple of days now.  And you heard

25   opening statements, testimony, stipulated facts,

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    reviewed documentary evidence presented by the parties

2    and have heard defendant's summation.  We are certainly

3    approaching the finish line now.

4          Before I begin plaintiffs' summation, I would

5    like to thank you on behalf of the plaintiffs, Kenneth

6    Salamone, RUFSTR Racing, LLC, and my co-counsel,

7    Ms. Hoffman.  You have been an attentive jury over these

8    last -- what seem like a -- longer than three days and

9    your service on the jury is greatly appreciated.

10         At the outset of this case, plaintiffs summed

11   up four points as to liability here.  Because the

12   defendant failed to timely deliver the boat, because the

13   boat was not timely delivered by defendants --

14   plaintiffs -- plaintiffs rejected the boat and the

15   contract, that defendant misinformed and misled

16   plaintiffs when it harbored it and sold the boat, and

17   that defendant ultimately received $886,500 for the

18   boat, engines and drives; $501,500 of which was from

19   plaintiffs.

20         Think about that for a second.  The defendants

21   received $876,500 for a boat.  They weren't even

22   entitled to that amount of money under the contract with

23   Mr. Salamone.  They were entitled to $102,000 and change

24   less and they paid, including the $50,000, that they

25   repaid to Mr. Salamone.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1            The testimony and documentary evidence

2    presented at this trial not only supports but affirms

3    that Mr. Salamone rightfully and -- rejected a boat that

4    was not delivered timely.

5            First, there's no dispute between the parties

6    that a contract existed.  There is also no dispute that

7    plaintiffs made each of the first two installment

8    payments that he was required to make under the terms of

9    the contract, totaling $361,500.  Not only does

10   Mr. Salamone's testimony confirm those amounts, those

11   are stipulated amounts.

12           There is no dispute, and it is stipulated,

13   that the plaintiffs paid $140,000 for the engines and

14   drives.  The evidence that you were presented shows that

15   the defendant did not deliver this boat to plaintiffs

16   timely, and that plaintiffs rejected the boat and

17   terminated the contract.

18           The evidence from both Mr. Salamone and

19   Mr. Saris showed that the plaintiff terminated this

20   contract in June of 2017 after, both witnesses

21   testified, that they learned in a conversation with

22   Mr. Cutsuries that the boat would take approximately

23   three more months.  Mr. Cutsuries, in his direct

24   examination by Ms. Hoffman, didn't recall whether he

25   made that statement or not, and he acknowledged that

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    Mr. Saris may very well be telling the truth.

2            The very next day, Mr. Cutsuries testified

3    that the boat was complete in June -- on June 27th,

4    2017.  Both versions of Mr. Cutsuries's testimony can't

5    be correct.

6            You have also reviewed documentary evidence

7    that shows that the boat was delayed.  The defendants

8    acknowledged the boat was delayed; they just blame the

9    plaintiff.

10           Again, the evidence is clear, plaintiffs

11   rejected the boat and the contract on June 27th, 2017.

12   The evidence also shows that plaintiff attempted to

13   mitigate his damages by consenting to the sale.  He

14   spoke with potential purchasers.  He followed up with

15   the defendants.  He asked what's going on with the boat?

16   Have you heard from Mr. DeSantis?  Any news yet?

17           I want to take a second again, and I know that

18   this is -- has been repeated multiple times with respect

19   to the numbers, but I think it's important.  The

20   evidence shows here -- the plaintiff is required to show

21   that he's been damaged.  The evidence shows that the

22   plaintiff has.  The contract price for the boat that

23   Mr. Salamone was required to pay was $723,559.  Again,

24   defendant received $300,000 from the plaintiff and

25   that's not disputed.  Another $140,000 for engines and

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE – 19-cv-1213

1    drives, which is not disputed.  $61,000 -- $61,500 which

2    is not disputed.

3            Defendant also received $300,000 from

4    Mr. Sheker in the subsequent sale of the boat, and

5    another $75,000 from Happy Days Marina.

6            In its opening statement, defendant advised

7    you that it was plaintiff and not the defendant that

8    delayed the construction of the boat.  The testimony and

9    documentary evidence that you were shown does not bear

10   this out.  None of the documents received into evidence,

11   including the text message chains in Joint Exhibit 43

12   and the emails and testimony concerning those documents,

13   show that defendant never advised plaintiffs that their

14   actions were holding up construction of the boat,

15   whether it be for paint, engines, or otherwise.

16           The contract here was entered into in December

17   of 2015.  In March of 2016, only three months later,

18   plaintiff asked the defendant when it needed the paint

19   codes, and the defendants responded and testified that

20   it would be a while.

21           Plaintiff, when he was finally asked for the

22   paint codes, responded in two hours.  Mr. Cutsuries

23   testified that the approximately two-week timeframe it

24   took plaintiff to respond for the graphics as opposed to

25   painted, caused an over six-month delay in the boat not

                Lisa L. Tennyson, CSR, RMR, FCRR
                UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   being painted.

2           This cannot be the reason the boat was

3   delayed.   There are no communications in an email or

4   text messages between plaintiffs and defendants marked

5   as joint exhibits where defendant advised either, one,

6   that plaintiff needed engines, or two, that now having

7   the engines before plaintiff authorized them to be

8   ordered delayed the boat in any way.

9           So how are we to believe that the engines

10  caused the boat's delay?   The defendant never asked for

11  them until February 28th, 2017.   The plaintiff approved

12  the purchase and paid for the engines immediately.

13          Defendant also attempts to manipulate the

14  death of Mr. Salamone's friend into an excuse for

15  failure to tender delivery of the boat.   Much has been

16  made in this case about the tragic accidents that killed

17  Mr. Salamone's racing friend.   You heard Mr. Salamone

18  and Mr. Saris testify firsthand as to his state of mind

19  after the accident.   Both witnesses told you it

20  reaffirmed his commitment to this Skater boat.

21          Instead, the defendant attempts to manipulate

22  that commitment by Mr. Salamone into a basis for their

23  rejection of the contract.

24          This is outrageous and should not be

25  countenanced.   There's absolutely no proof provided by

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1  defendant is for their story.  Importantly, you were

2  read Mr. Hledin's deposition transcript testimony where

3  he testified that Mr. Salamone never told him that he

4  rejected the boat because of his friend's death.  But,

5  rather, Mr. Hledin testified that he just knew it wasn't

6  the reason.  Mr. Hledin used some pretty crass language

7  with respect to Mr. Salamone in that conversation as

8  well.

9          The defendant is never demonstrated that

10  you -- that it delivered or tendered the boat to

11  Mr. Salamone.  Nothing tells you that.  The pictures

12  aren't inclusive proof that that boat was done.  The

13  defendant testified that it's put on the tilt trailer to

14  save space in the warehouse.  It could have been rolled

15  out just as easily.

16          Not one email or text is sent to Tony

17  Cutsuries to tell Mr. Salamone that the boat is done.

18  It defies any reasoning.  Tony Cutsuries and Kenneth

19  Salamone emailed and texted as a matter of routine.

20  Those emails and texts are in evidence.  When

21  Mr. Salamone was asked for a payment, he was asked in a

22  text or an email.  Mr. Salamone paid it.  The contract's

23  at issue in this case.  Other than the June 12, 2015,

24  contract, plaintiffs submit were sent by electronic

25  mail.

                    Lisa L. Tennyson, CSR, RMR, FCRR
                UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    By the time that Mr. Salamone rejected the

2    boat, he had been waiting for an update.  That was never

3    made by text or email.

4    The defendant would now have you determine

5    that based on an invoice to Mr. Salamone on June 12th of

6    2017 via U.S. post office to ask for payment on an

7    invoice.

8    The defendant stipulates at joint fact number

9    53, which will be submitted to the jury, that the

10   June 12th, 2017, invoice is not a final invoice.  What

11   the defendant does show us on June 27, 2017, is a series

12   of photos of Mr. Salamone's boat on his trailer.  It is

13   only then that the defendant asserts the boat is done.

14   The plaintiff and Mr. Saris both testified

15   that Mr. Cutsuries told them on the day prior that the

16   boat was not done and would be another three months.

17   During his testimony, Mr. Cutsuries gave many

18   inconsistent statements.  We briefly detailed the most

19   important point.  Mr. Cutsuries didn't know whether or

20   not Mr. Saris or Mr. Salamone's -- in the conversation

21   with Mr. Saris and Mr. Salamone that he was -- that he

22   advised that the boat would take three months.  It was

23   the next day that he did.

24   Mr. Cutsuries also didn't, in connection with

25   selling the boat, have to tell Mr. Salamone who the

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   buyer's name was to tell him the truth.

2          Defendant, even in its closing, wants you to

3   believe what a terrible person Mr. Salamone is.  But

4   these fabrications about Mr. Salamone are simply not

5   true.

6          They would have -- Mr. Hledin or the defendant

7   would have you believe that Mr. Salamone, through

8   Mr. Hledin's testimony, threatened the plaintiff or the

9   defendant to lock their doors.  To make them file for

10  bankruptcy.  And then immediately after, they sent him

11  letters and emails.  Not one of which references that

12  they were threatened.

13         Mr. Hledin acknowledged in his testimony that

14  Mr. Salamone didn't have the balls to tell him.  What

15  the defendant would have you believe about Mr. Salamone

16  again is simply not true.

17         They happily invited him out to their Michigan

18  facility in 2018.  Their actions and written words tell

19  you all you need to know about Mr. Salamone.  He's a

20  loving father.  Caring of his son.  A boat racer.  He

21  served this country.  His text messages back and forth

22  to the defendants are not angry or threatening, nor are

23  his emails.

24         Mr. Salamone consented to the sale of the boat

25  and tried to follow up.  The documentary evidence that

              Lisa L. Tennyson, CSR, RMR, FCRR
              UNITED STATES DISTRICT COURT - NDNY

1   you have doesn't support the story that the defendant

2   would have you believe of Mr. Salamone.

3         Mr. Salamone has always taken the high road in

4   his rejection of the contract and, again, that

5   documentary evidence bears that out.

6         The evidence also shows that plaintiff owned

7   the engines, drives and transoms and their proceeds.

8   There's no dispute that plaintiffs paid 140,000 for the

9   engines and drives.  There's no dispute they were sold.

10  There's no dispute that only $50,000 of the proceeds

11  were ultimately paid to Mr. Salamone.

12        In addition to the -- to the $50,000,

13  Mr. Salamone received an additional $25,000 for the

14  engines.  The evidence clearly shows that the drives and

15  transoms were sold as part of the defendant's subsequent

16  sale and garnered $78,230.  None of that money was paid

17  back to the plaintiff.

18        To sum up, there is no question here that a

19  contract exists.  The evidence that was submitted to you

20  clearly shows that there was a contract and it's

21  stipulated to.

22        The amounts that Mr. Salamone paid and the

23  amounts that were ultimately due to the defendant are

24  clear.  There's no dispute.  The dispute arises with

25  respect to when the boat was done.  The evidence shows

1   the boat was not done when it was rejected by

2   Mr. Salamone.  And as a result, we would respectfully

3   request the Court or the jury enter a verdict in favor

4   of the plaintiff for the full contractual balance that

5   is due as instructed by the Court.  Thank you.

6          THE COURT:  Thank you.  Members of the jury, I

7   have to instruct you on the law.  It's a little bit

8   lengthy.  Would you like to stretch or use the restroom

9   before I do that?  Or do you want me to go right to it?

10  What's your consensus?  Anybody need a break?  Anybody?

11  Okay.  Then I'll just go into instructing you on the

12  law; we will be breaking at 11 a.m., however.

13         Members of the jury, if you ever cannot hear

14  me during this instructions, just raise your hand and I

15  will raise my voice.  You must base your verdict on

16  instructions that I am giving you now and not on the

17  preliminary instructions I gave you at the beginning of

18  the case.  You will have a copy of these instructions in

19  the jury room in case you would like to review them

20  during your deliberations.  So everything that I'm

21  saying to you, you will have a copy of it in the room

22  while you deliberate.

23         Now that you have heard all the evidence and

24  the arguments of counsel, it is my duty to instruct you

25  on the law applicable to this case.  As I said, the law

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   is a little bit lengthy and if at any time you want to

2   stand and stretch while I'm reading, it will not in any

3   way bother me.

4        Your duty as jurors is to determine the facts

5   of the case on the basis of the admitted evidence.  Once

6   you have determined the facts, you must apply the law as

7   I am now instructing you to those facts.

8        You must consider and apply all of these

9   instructions.  You may not elect to apply some

10  instructions and omit others.  It is the application of

11  these instructions in their entirety that states the

12  law.

13       You should not concern yourselves with the

14  wisdom of any law or rule of law that I give you.  You

15  are bound to accept and apply the law as I give it to

16  you whether or not you agree with it.  As I said on day

17  one, you are the supreme finders of the fact.  No one,

18  not even myself, can interfere with that, but on the

19  law, you must accept the law as I instruct you.

20       In deciding the facts of this case, you must

21  not be swayed by feelings of bias, prejudice, or

22  sympathy toward either the plaintiffs or the defendant.

23  And let me make clear that I'm saying "plaintiffs" with

24  an "s" on it because the plaintiffs are Mr. Salamone and

25  a limited liability corporation of his called RUFSTR.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    Okay?  So that's why I'm saying plaintiffs instead of

2    just plaintiff.

3            So to repeat, in deciding the facts of the

4    case, you must not be swayed by feelings of bias,

5    prejudice, or sympathy toward either plaintiffs or

6    defendant.  You are not to consider what the parties' or

7    the public's reaction to your verdict may be, whether it

8    will please or displease anyone, be popular or

9    unpopular, or, indeed, any consideration outside the

10   case as it has been presented to you in this courtroom.

11           You should consider only the evidence -- both

12   the testimony and all of the exhibits -- and apply the

13   law as I now give it to you.  The proper administration

14   of justice requires that you carefully and impartially

15   consider all of the evidence in the case, follow the law

16   as the Court states it, and render a decision based upon

17   the application of the law to the facts as you find them

18   to be.

19           Nothing I say in these instructions should be

20   taken as an indication that I have any opinion about the

21   facts of this case.  It's not my function to determine

22   the facts.  It's yours.

23           In addition, you must not infer from anything

24   I have said or done during this trial that I hold any

25   views for or against either the plaintiffs or the

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   defendant.  In any event, any opinion that I might have

2   would be totally irrelevant to your decision.

3           Now, our courts operate under an adversary

4   system which we hope that the truth will emerge through

5   the competing presentations of opposing parties.  It is

6   responsibilities of the attorneys to press as hard as

7   they can for their respective positions.  It is their

8   role to call your attention to those facts which are

9   most helpful to their side of the case.

10          In fulfilling their rule, they have not only

11  the right but also the obligation to make objections to

12  the introduction of evidence that they believe is

13  improper.  The application of the rules of evidence is

14  not always clear, and lawyers will often disagree.  It's

15  been my job as judge to resolve these evidentiary

16  disputes.  It's important for you to realize, however,

17  that my rulings on evidentiary matters have nothing to

18  do with the ultimate merits of the case, and they are

19  not to be considered as points scored for one side or

20  the other.

21          Also, one cannot help but become involved with

22  the personalities and the styles of the attorneys.  But

23  it is important for you as jurors to recognize that this

24  is not a contest between attorneys.  You are to decide

25  this case solely on the basis of the evidence, and

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1  remember that the attorneys' statements and

2  characterizations of the evidence are not evidence.

3          Insofar as you found the opening and closing

4  statements helpful, as I said yesterday, take advantage

5  of them.  But it is your memory and your evaluation of

6  the evidence that counts.

7          Questions asked by the attorneys are not

8  evidence.  Only the witnesses' answers in response to

9  the questions are evidence.  As I stated earlier, your

10  duty is to determine the facts based on the evidence I

11  admitted.  The term "evidence" includes the sworn

12  testimony of the witnesses that you heard from the

13  witness stand and all of the exhibits that were received

14  in evidence.

15          Although you should consider only the admitted

16  evidence, you may draw inferences from the testimony and

17  exhibits which are justified in light of your common

18  experiences.  As I explained in my preliminary

19  instructions, the law recognizes two types of evidence:

20  direct and circumstantial.

21          Direct evidence is the testimony of one who

22  asserts personal knowledge, such as an eyewitness.

23  Circumstantial or indirect evidence is proof of a chain

24  of events which points to the existence or non-existence

25  of certain facts.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    The law does not distinguish between the
2  weight to be given to direct or circumstantial evidence,
3  nor is a greater degree of certainty required of
4  circumstantial evidence than of direct evidence.  You
5  may rely on either type of evidence in reaching your
6  decision.
7    If during the course of the trial I told you
8  to disregard any testimony or I struck any exhibits or
9  testimony from the record, such testimony or exhibits
10 are not evidence and may not be considered.
11    Now, to say that a party has a burden of proof
12 on a particular issue means that considering all of the
13 evidence in the case, that party's claim on that issue
14 must be established by what we call a fair preponderance
15 of the credible evidence.
16    The credible evidence means the testimony and
17 the exhibits that you find worthy of belief.  A
18 preponderance means the greater part of the evidence.
19 This does not mean the greater number of witnesses or
20 the greater length of time taken by other -- by either
21 side.
22    The phrase preponderance of the evidence
23 refers to the quality of the evidence, its weight, and
24 the effect that it has on your minds.  In order for a
25 party to prevail on an issue on which it has been the

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   burden of proof, the evidence that supports its claim on

2   that issue must appeal to you as more nearly

3   representing what happened than the evidence opposed to

4   it.  If it does not, or if it weighs so evenly that you

5   are unable to say that you are -- pardon me -- that you

6   are unable to say that there is a preponderance on

7   either side, you must decide the question against the

8   party who has the burden of proof and in favor of the

9   opposing party.

10          You have now had the opportunity to observe

11  all of the witnesses.  It's now your job to decide how

12  believable each witness was.  You are the sole judges of

13  the credibility of the witnesses and the importance of

14  his or her testimony.

15          Now, in evaluating a witness's testimony, you

16  should use all the tests for truthfulness that you would

17  use in determining matters of importance to you in your

18  everyday life.  You should consider any bias or

19  hostility that the witness may shown for or against

20  either party, as well as the interest that the witness

21  may have in the outcome of the case.  You should

22  consider the opportunity that the witness had to see,

23  hear, and know the things about what the witness

24  testified, and the accuracy of the witness's memory, the

25  candor or lack of candor, the reasonableness, and the

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   probability of the witnesses testimony.  The testimony's

2   consistency or lack thereof, and its corroboration or

3   lack of corroboration with other credible testimony.

4         Inconsistencies or discrepancies in the

5   testimony of a witness or between the testimony of

6   different witnesses may or may not cause you to

7   discredit such testimony.  Two or more persons

8   witnessing an incident or a transaction may see or hear

9   it differently, an innocent misrecollection.  Like

10  failure of recollection is not an uncommon experience.

11        In weighing the effect of any discrepancy,

12  always consider whether it pertains to a matter of

13  importance or an unimportant detail, and whether the

14  discrepancy results in an innocent error or an

15  intentional falsehood.

16        If you were to find that any witness willfully

17  testified falsely as to any material fact, that is, to

18  an important matter, the law permits you to disregard

19  completely the entire testimony of that witness upon the

20  principle that one who testifies falsely about one

21  material fact is likely to testify falsely about other

22  important matters.  You are not required, however, to

23  consider such a witness totally unworthy of belief.  You

24  may accept so much of that witness's testimony as you

25  deem true and disregard what you feel is false.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1          By the processes which I have described to

2     you, you, as the sole judges of the facts, decide which

3     of the witnesses to believe, which witnesses you will

4     not believe, what portion of their testimony you accept,

5     and what weight you will give to that testimony.

6          In other words, what you must try to do in

7     deciding credibility is to size up a witness in light of

8     the witness's demeanor, the explanations given, and all

9     of the other evidence in the case.

10         Remember, you should always use your good

11    common sense, your good judgment, and your own life

12    experience.  Also remember that the existence or

13    non-existence of the facts, as I said, is not determined

14    by the number of witnesses called.  Your concern must

15    always be with the quality, not the quantity, of the

16    evidence.

17         Now, an interested witness is a person who has

18    an interest in the outcome of the trial.  Here,

19    plaintiffs and the defendant are interested witnesses.

20    An interested witness is not necessarily less believable

21    than a disinterested witness.  The fact that he is

22    interested in the outcome of the case does not mean that

23    he has not told the truth.  It's for you to decide from

24    the demeanor of the witness on the stand, and such other

25    tests as your experience dictates, whether the testimony

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1  has been influenced intentionally or unintentionally by

2  that interest.

3          You're not required to reject the testimony of

4  such a witness.  You may accept all or part of his

5  testimony as you find it reliable and reject such part

6  as you find unworthy of acceptance.

7          Now, a witness may be discredited or impeached

8  by contradictory evidence or by evidence that at some

9  other time the witness has said or done something or has

10 failed to do or say something that is inconsistent with

11 the witness's present testimony.

12         If the witness is not a party to this action,

13 such prior inconsistent, out-of-court statements may be

14 considered for the sole purpose of judging the witness's

15 credibility.  However, it may not be considered as

16 evidence of proof of the truth of the statement.

17         On the other hand, when the witness is a party

18 to the case and by such statement or other conduct

19 admits such fact or facts against the witness's

20 interest, then such statement or other conduct, if

21 knowingly made or done, may be considered as evidence of

22 the truth of the fact or facts so admitted by such

23 party, as well as for the purpose of judging the

24 credibility of the parties as a witness.

25         As I've said, if you believe any witness has

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1  been impeached and thus discredited, you may give the
2  testimony of that witnesses such credibility if any you
3  think it deserves.
4       If a witness is shown knowingly to have
5  testified falsely about any material matter, you have
6  the right to distrust that witness's testimony and you
7  may reject all of the testimony of that witness or give
8  it such credibility as you think it deserves.
9       Now, a stipulation is an agreement between the
10  parties that a certain fact is true.  You must regard
11  such agreed facts as true.  I'm going to send in to you
12  99 facts that the parties got together on and agreed to.
13  So those will be in the jury room for you to look at.
14       Your verdict must be based solely on the
15  evidence developed at trial or the lack of evidence.
16  Under your oath as jurors, you're not to be swayed by
17  sympathy.  You are to be guided solely by the evidence
18  in the case and the crucial question that you must ask
19  yourselves as you sift through the evidence is:  Have
20  plaintiffs proven defendant's liability by a fair
21  preponderance of the evidence?
22       In reaching your decision, it would be
23  improper for you to consider any personal feelings that
24  you might have about the party's race, religion,
25  national origin, sex, or age.  It would be equally

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   improper for you to allow any feelings you might have

2   about the nature of the claims to interfere with your

3   decision-making process.

4         The law does not require any party to call as

5   witnesses all persons who may have been present at any

6   time or place involved in the case or who may appear to

7   have some knowledge of the matters at issue in trial,

8   nor does the law require any party to produce as

9   exhibits all papers and things mentioned in this case.

10         Some of the testimony before you is in the

11   form of depositions which have been received in

12   evidence.  A deposition is simply a procedure where,

13   prior to trial, the attorneys for one side may question

14   a witness or an adversary party under oath before a

15   court reporter.  This is part of what we call pretrial

16   discovery, and each side is entitled to take

17   depositions.

18         You may consider the testimony of a witness

19   given at a deposition according to the same standards

20   you would use to evaluate the testimony of a witness

21   given at trial.

22         Now, I'm going to talk to you about breach of

23   contract.  The parties agree that they entered into a

24   valid and enforceable contract for the sale of a new

25   Skater 388 race boat on December 7th, 2015.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1        Plaintiffs claim that defendant breached that

2   contract by failing to deliver the Skater within a

3   reasonable time.  Plaintiffs' claim at that point, they

4   rightfully rejected the Skater and terminated the

5   contract.

6        A cancelation occurs when either party puts an

7   end to the contract for breach by the other and its

8   effect is the same as that as a termination except that

9   the canceling party also retains any remedy for breach

10  of the whole contract or an unperformed balance.

11       In this case, you must decide whether the

12  contract is properly canceled through plaintiffs'

13  rightful rejection of the Skater.  Defendant claims that

14  plaintiffs' rejection was wrongful, and plaintiffs thus

15  breached the contract by repudiating their obligations

16  under the contract before performance was due.

17  Repudiation occurs when a buyer distinctly tells or

18  through its actions clearly shows the seller that it

19  does not intend or is unable to perform the contract or

20  any part of the contract and the loss of performance

21  substantially impairs the value of the contract to the

22  seller.

23       Plaintiffs bring their claims pursuant to

24  Michigan law.  Under Michigan law, the plaintiffs have

25  the burden of proving, A, that the contract exists; B,

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1   plaintiffs substantially performed their obligations

2   under the contract; C, defendant breached the contract;

3   and D, plaintiffs were damaged by the breach of

4   contract.

5        First element:  Existence of a contract.  A

6   contract for the sale of goods exists when a seller

7   offers to sell goods and a buyer accepts that offer.

8   The parties here have stipulated that plaintiffs have

9   satisfied this element.  As such, you need not concern

10  yourselves with this element.

11       Second element:  Plaintiff substantially

12  performed.  In considering the second element of

13  plaintiffs' claim, that is, whether the plaintiff

14  substantially performed their obligations under the

15  contract, plaintiffs must establish by a preponderance

16  of the evidence that they substantially performed all of

17  their obligations under the contract prior to when they

18  allege defendant breached the contract.

19       Each party to a contract has a duty to perform

20  his or her obligations under the contract.  A contract

21  is breached or broken when a party does not

22  substantially perform what the party promised to do in

23  the contract.  Plaintiffs cannot rightfully reject the

24  Skater if they already breached the contract.

25       You must therefore determine whether

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   plaintiffs substantially performed their obligations

2   under the contract.  When I say that plaintiffs must

3   have substantially performed the contract or that

4   substantial performance of the contract is required, I

5   mean that although there may have been some deviations

6   or omissions from performance called for by the language

7   of the contract, defendant received the important and

8   acceptable benefits for which the contract was made.

9           The extent of non-performance is to be viewed

10   in light of the full performance promised.  If a defect

11   or uncompleted performance is of such extent and nature

12   that there has not been practical fulfillment of the

13   terms of the contract, then there has not been

14   substantial performance.

15           If you determine that plaintiffs did not

16   substantially fulfill their obligations under the

17   contract, then your verdict should be for the defendant,

18   and plaintiffs are not entitled to any damages as to

19   this claim.

20           Third element:  Defendant -- if defendant

21   breached the contract.  If you have determined that

22   plaintiff substantially performed their obligations

23   under the contract, then you must determine whether the

24   defendant breached the contract by not tendering or

25   delivering the Skater in a manner that conforms to the

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1     contract.

2         The parties agree that the contract does not

3     include a date for delivery; therefore, you must

4     determine whether the Skater was tendered at all in, and

5     if so, if it was tendered within a reasonable time.

6     "Tender" means that the seller has put and holds goods

7     at the buyer's disposal and has given the buyer any

8     notification reasonably necessary to enable them to make

9     delivery.

10         What is a reasonable time? is a question for

11     you to decide based on the evidence, bearing in mind the

12     subject matter of the contract and the surrounding

13     circumstances. Note that the defendant claims that the

14     tender of delivery of the boat prior to June 2017 was

15     excused because the plaintiffs waived their performance.

16         To excuse non-performance, defendants must

17     prove that plaintiffs voluntarily and knowingly gave up

18     their rights to insist on tender of delivery earlier

19     than that date. In other words, plaintiffs must have

20     known that they had the right to go -- pardon me.

21     Plaintiffs must have known that they had the right to

22     insist on the tender of the delivery by defendants

23     before June 2017 but, nevertheless, agreed to give up

24     this right.

25         If plaintiffs waived this right, they were not

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    entitled to cancel the contract.  A waiver may be

2    expressly stated or it may be implied by acts or conduct

3    indicating an intent not to enforce the contractual

4    right such that a reasonable person would think that

5    performance was no longer required.

6            A waiver of a substantial right requires

7    consideration.  Consideration is something of value

8    given in exchange for the promise.  However, an act done

9    in the past cannot be consideration for a later

10   contract.  Doing or promising to do what one is already

11   obligated to do is not consideration.  The consideration

12   does not need to be expressed in writing.

13           Thus, if you determine that defendant did not

14   tender the Skater at a reasonable time, you must also

15   determine whether plaintiffs waived this right.

16           If you determine that plaintiffs waived their

17   right to tender the Skater's delivery prior to June 2017

18   by the defendant, then you have determined that

19   defendant did not breach the contract and plaintiffs

20   could not rightfully reject the Skater.  You must then

21   determine whether plaintiffs repudiated their

22   obligations under the contract before performance was

23   due.

24           Defendant claims that the plaintiffs breached

25   the contract by repudiating their obligations under the

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   contract before performance was due.  Repudiation occurs

2   when a buyer distinctly tells or through its actions

3   clearly shows the seller that it does not intend or is

4   unable to perform the contract or any part of the

5   contract and the loss of performance substantially

6   impairs the value of the contract to the seller.

7           You must determine whether the plaintiffs

8   breached the contracted by repudiation.  If you

9   determine that plaintiffs did not waive their rights

10  under the contract and the Skater was actually tendered,

11  plaintiffs are entitled to reject the Skater if the

12  Skater or the manner, time, or place of its tender did

13  not conform to the contract and plaintiffs notified

14  defendant of the nonconformity within a reasonable time

15  after tender.

16          Plaintiffs have the burden of proving that

17  they gave defendant the required notification.  If you

18  determine that the time and place of the tender

19  conformed to the contract or that plaintiffs failed to

20  notify defendant of their rejection within a reasonable

21  time after tender, then plaintiffs have breached the

22  contract.

23          If you determine that the time or place of the

24  tender did not conform to the contract, and that

25  plaintiffs notified the defendant of their rejection

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

85

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    within a reasonable time after tender, then defendant

2    has breached the contract.

3            Now let me talk to you about damages.  If you

4    find that plaintiffs did not establish each of the

5    elements of its breach of a contract claim, then your

6    verdict should be for the defendant, and plaintiffs are

7    not entitled to any damages.

8            If you find that the defendant breached the

9    contract by failing to make delivery of the goods called

10   for in the contract, you must compute the plaintiffs'

11   damages as discussed below.

12           Now, although I am instructing you on the law

13   of damages, it's entirely up to you to decide what to do

14   on that account.  If you believe that the plaintiff has

15   carried his -- their burden of proof and should be

16   awarded damages, then you will take into consideration

17   the damages charge.  If you believe that the plaintiff

18   has not proven his case -- their case by a preponderance

19   of the evidence, then it will be up to you to decide

20   that you are not going to award damages.

21           So just because I'm instructing you on damages

22   is not an indication of how you should find.  It's to

23   assist you in terms of answering the questions on

24   verdict sheet that I'm giving you, and this is last

25   thing I'll say before we take our 11 a.m. break; it's

                    Lisa L. Tennyson, CSR, RMR, FCRR
                    UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    very brief.

2            I instruct you that the parties have agreed

3    that the contract price was $723,559.  That's $723,559.

4    Plaintiffs assert that the cost of the paint was

5    included in the $723,559.  Defendant asserts that

6    $38,000 is not reflected in the $723,559.  If you find

7    that the cost of the paint was not reflected in the

8    invoice of June 12th, 2018, add $38,500.

9            I instruct you that the parties agree that the

10   amount plaintiffs paid to the defendant was $501,500.

11   $501,500.  That is the amount plaintiffs paid to the

12   defendant.  And the amount defendant paid to plaintiffs

13   was $50,000.

14           If plaintiffs have proven by a preponderance

15   of the evidence that defendant is liable for breach of

16   contract, then you must determine the amount of damages

17   which plaintiffs are entitled to for that claim.

18   However, you should not infer that plaintiffs are

19   entitled to recover damages, as I said, merely because

20   I'm instructing you on the elements of damages.  It is

21   exclusively your function to decide the issues of

22   liability outlined above, and I'm instructing you on

23   damages only so you will have guidance should you decide

24   that plaintiffs are entitled to recovery.

25           A successful plaintiff in a breach of contract

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    claim is entitled to recover damages that would place

2    that plaintiff in the same position as if the contract

3    had not been breached.  In other words, the plaintiff

4    may recover those damages naturally arising from the

5    breach of contract.

6           In making this determination, you must

7    determine the contract price, the amount that plaintiffs

8    paid to the defendant, any expenses that plaintiff may

9    have saved as a result of the breach, and the amounts

10   remitted to plaintiff.

11          Additionally, if plaintiffs still owed money

12   to defendant on the agreed-upon contract price, that

13   amount should not be included in any damages award.

14          So, folks, it's just a couple minutes after

15   11, and we are going to take a ten-minute break, and

16   then the rest of the charge is very brief.

17          So, during this break, please do not discuss

18   this case amongst yourselves or with anyone else.  Don't

19   do any research on the case.  Remember all of my

20   instructions to you.  I'm not quite finished.  I only

21   have a few minutes but we're going to take our 11:00

22   break.  We stand in recess for ten minutes.

23          (Jurors excused)

24          THE COURT:  As I believe counsel knows, but I

25   will reiterate, we have a juror with a medical condition

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1  that requires that we break for ten minutes at 11:00.

2  Otherwise, I would have finished the charge because I

3  was very close to being finished but we will reconvene

4  in ten minutes.

5           (Recess taken)

6           THE COURT:  Let's get the jury please.

7           (Jurors present, 11:15 a.m.)

8           THE COURT:  Members of the jury, I'm going to

9  take a moment to review the verdict sheet that you will

10 be given in the jury room, just to make sure that you

11 are clear on it.

12          It begins with what we call the caption of the

13 case.  As I said, there are technically two plaintiffs,

14 Mr. Salamone and RUFSTR Racing, LLC., and to the right

15 of that is simply a number our court gives this case and

16 the initials of the judge; MAD is me.

17          We also have a magistrate judge, Judge

18 Stewart, and those are what those initials mean, so

19 there's nothing significant about that.

20          We will take a look at the beginning of the

21 jury verdict form.  I note that each juror will be

22 provided with a verdict form.  This is very important.

23 However, your verdict should be reported to the judge on

24 only one verdict form which we sign by the foreperson,

25 and then the remaining forms will be returned to the

               Lisa L. Tennyson, CSR, RMR, FCRR
               UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   courtroom unsigned.

2          In order to help you in your deliberations,

3   I've prepared questions for you, and it's very important

4   that after each question, you follow the instructions

5   that are in boldface.  That's critical.

6          So question 1-A I tell you that the parties

7   have stipulated that a valid contract existed between

8   the parties.  So you don't -- in other words, you don't

9   have to decide if there was a valid contract.  The

10  parties have admitted together that there was a valid

11  contract.

12         So then you go to question 1-B:  Did

13  plaintiffs establish by a fair preponderance of the

14  credible evidence that plaintiffs substantially

15  performed their obligations under the contract?  You

16  will answer that yes or no, and then carefully follow

17  the boldface.

18         If you answered yes to question 1-B, you go to

19  1-C.  If you answer no to question 1-B, then your

20  deliberations are complete, and you return to the

21  jury -- into the courtroom and you will announce your

22  verdict.  We will look at all of the questions just so

23  you see what's coming.  How many questions you answer is

24  entirely up to you.

25         Okay?  Again, just because I'm going over the

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    entire verdict sheet, you decide how many questions are

2    answered by answering the questions in the order that I

3    have given them to you and then following the

4    instructions.

5            If you get to question 1-C, did plaintiffs

6    establish by a fair preponderance of the evidence that

7    defendant breached the contract by failing to tender the

8    Skater within a reasonable time?  Again, you will answer

9    that yes or no.  And I'm not going to read the whole

10   verdict form to you but you will follow the questions --

11   you will follow the instructions, I should say, under

12   that question.

13           If you get to question 1-D, has the defendant

14   proved by a preponderance of the evidence that

15   plaintiffs waived the right to insist on tender of the

16   Skater prior to June 27th, 2017? you will answer that

17   with a yes or no.  Carefully follow the boldface

18   instructions.

19           1-E:  Has defendant proved by a fair

20   preponderance of the evidence that plaintiffs breached

21   the contract by rejecting the Skater before defendant

22   tendered the Skater?  And you get to that question, you

23   will answer it with a yes or no, to follow the boldface

24   instructions.

25           Question 1-F:  Have plaintiffs proved by a

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    fair preponderance of the evidence that they were

2    damaged as a result of defendant's breach?  You will

3    answer that with a yes or a no and follow the boldface

4    instructions.

5           If you decide to award damages in this case,

6    1-G, what amount of compensatory damage, if any, do you

7    find that plaintiffs have proven by a fair preponderance

8    of the evidence would fairly compensate plaintiffs for

9    the damages resulting from defendant's breach?  You will

10   fill that in with an amount that you believe is just and

11   reasonable based upon the evidence, and then your

12   deliberations would be complete.

13          To reiterate, you and you alone decide how

14   many of these questions you will answer by taking them

15   one at a time and following the boldface instructions

16   that follow them.

17          I have now outlined the rules of law

18   applicable to this case and the processes by which you

19   should weigh the evidence and determine the facts.

20          In just a few minutes, you're going to retire

21   to the jury room for your deliberations.  Your first

22   order of business in the jury room will be to elect a

23   foreperson.  The foreperson's responsibility is to

24   ensure that the deliberations proceed in an orderly

25   manner.  The foreperson's vote, however, carries the

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1  same weight as the vote of any other juror.

2         As jurors, you are required to discuss the

3  issues and the evidence with each other.  Although you

4  must deliberate with a view to reaching an agreement,

5  you must not violate your individual judgment or your

6  conscience in doing so.

7         The proper administration of justice requires

8  you to give full and conscientious consideration to the

9  issues and evidence before you in determining the facts

10  of the case, and then you apply the law as I have given

11  it to you to those facts.

12         To return a verdict, it is necessary that each

13  juror agree.  Your verdict must be unanimous.  During

14  your deliberations, do not hesitate to re-examine your

15  views and change your mind.  Do not, however, surrender

16  your honest convictions because of the opinion of a

17  fellow juror or just for the purposes of returning a

18  verdict.

19         Remember, you're not the partisans.  You are

20  the judges.  The judges of the facts.  Your duty is to

21  seek the truth from the evidence presented to you while

22  holding the parties to their burden of proof.

23         If in the course of your deliberations your

24  recollection of any part of the testimony should fail,

25  or if you should find yourselves in doubt concerning any

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   instructions, it is your privilege to return to the
2   courtroom and to have the testimony read to you or my
3   instructions gone over with you and, again, or possibly
4   further explained.  But remember this.  One, you will
5   have a copy of my instructions in the jury room with
6   you; and two, it's been a short trial.  If you do ask
7   for testimony to be read back to you, it does take us
8   awhile to find precisely what you want.  So just have to
9   be patient with us if you send in a note and say we want
10  something reread.  But obviously it's your collective
11  memories of the testimony that counts in this case.
12          You should make a conscientious effort to
13  resolve any questions as to the testimony, as I said,
14  through your collective recollections.
15          Should you desire to communicate with the
16  Court during your deliberations, please put your message
17  or your question in writing.  The foreperson should sign
18  the note and pass it to the marshal, who will bring it
19  to my attention.  I will then respond by having all of
20  you brought back into the courtroom.  So what I do is I
21  share the note or the question that you have with the
22  attorneys.  I give them a copy of it.  I bring you back
23  into the courtroom.  I read your note or your question,
24  and then I do my best to answer what it is in a may be
25  on your mind.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1          There is no time limits on your deliberations,
2    members of the jury.  Once you have reached a unanimous
3    verdict, your foreperson should fill in one verdict
4    form, date it and sign it, and inform the marshal that
5    you have reached a verdict.
6          Britney, would you swear in our court officer
7    please.
8          COURT CLERK:  Yes, Judge.  Please raise your
9    right hand and state your full name for the record
10   please.
11         COURT OFFICER:  Joseph Graziane.
12         (Court officer sworn.)
13         THE COURT:  Now as I said yesterday, your
14   lunch is going to be delivered.  It's entirely up to you
15   if you want to deliberate while you eat or you want to
16   pause and then deliberate.  I don't know if we have any
17   individuals on the jury who smoke; sometimes we do.  But
18   the bottom line is, if anybody is in the bathroom or if
19   anyone is outside smoking, the deliberations have to
20   stop until all eight of you are together.  So, when you
21   deliberate, it's always eight of you together.
22         In just a few minutes, we are going to get all
23   of the evidence for you.  As I said on day one, we put
24   it in a binder.  There's no easy way to do this during
25   COVID precautions because even if I sent a computer in,

                    Lisa L. Tennyson, CSR, RMR, FCRR
                    UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1    it could end up in people being too close as you gather
2    around the computer.  So we're sending in the evidence
3    in a binder with sterile gloves.  Look at the evidence
4    all you want to, one at a time, unless the rest of you
5    are at a distance, and if you look at the evidence in
6    the binder more than once, take off your old gloves and
7    put a new pair on.  Okay?  And continue to do all of the
8    things that you have done to keep yourself safe and
9    healthy since Monday because we certainly, has the
10   lawyers have said, appreciate your willingness to be
11   here.
12           So in just a moment we are going to send the
13   evidence in.  I'm just going to have the lawyers look at
14   the evidence and tell me that that's exactly what they
15   want sent in.  We have it ready.  And then you'll go in
16   and deliberate.  So, at this time, I'm instructing you
17   to please retire to the jury room and begin your
18   deliberations.
19           (Jurors excused, 11:27 a.m.)
20           MR. HALLAK:  Your Honor, on the verdict form
21   that we just got, we notice one small unintentional
22   error here, and it's under 1-C and the instructions
23   after the answer, it says if you answered yes to 1-C,
24   please proceed to 1-D.  If you answered no to 1-B, your
25   deliberations are complete.  I think that B was supposed

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1   to be a C.  So I think that was --

2          THE COURT:  That is.  And this verdict sheet

3   hasn't gone in yet.

4          MR. HALLAK:  That's why I wanted to bring it

5   up now before it went in to the jury and somebody might

6   have been confused.

7          THE COURT:  We will make that correction and

8   get it in.  Have both sides had an opportunity to look

9   at the evidence that we have proposed to send in?

10          MR. HALLAK:  Not yet.

11          THE COURT:  Okay.

12          MS. HOFFMAN:  I'm sorry.

13          THE COURT:  Feel free to take a look because

14   I'm going to ask you if that is satisfactory to you in

15   just a minute.  Britney is pretty good at putting that

16   evidence binder together but you take a look and make

17   sure you're comfortable.

18          MR. HALLAK:  We're okay.  Go ahead.

19          MS. HOFFMAN:  Looks great.

20          COURT CLERK:  And they will each have a copy

21   of the jury instructions and the verdict form once it's

22   corrected.

23          THE COURT:  Is the evidence as we propose to

24   send it in to the jury satisfactory to the plaintiff?

25          MR. LITTLE:  It is, your Honor.  Thank you.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1        THE COURT:  Is the evidence as we propose to
2    send it in to the jury satisfactory to defense counsel?
3        MR. HALLAK:  It is for the defense as well,
4    your Honor.  Thank you.
5        THE COURT:  Okay.  Let me say this now before
6    a verdict comes in.  I appreciate how prepared the
7    attorneys have been for this trial.  I appreciate, for
8    the most part, your written submissions; particularly
9    your memos of law.  Obviously I'm always trying to move
10   a trial along because, as you've seen at different times
11   in this case, it's not easy for jurors always to stay
12   with us.  They tire, and we can physically see it and so
13   when I was telling people to move along, it was so that
14   we could hopefully have the jurors' attention.
15       Contract cases, they -- for jurors, they are
16   not the most scintillating; I will tell you that.  And
17   so, when I was admonishing both sides to move along,
18   there was a reason for that, and you followed my
19   instructions, and we did not have eventually a whole lot
20   of repetition in the case, which I think helped with
21   juror attention.
22       But it has been an enjoyable experience to
23   work with counsel, and you all knew the facts of this
24   case.  It was obvious to me from the moment we started
25   until the moment we finished.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

1            The jury is deliberating.  I settled many a
2     case while a jury is deliberating.  Just throw that out
3     for you.  And obviously this case has not been settled
4     and we have put it in the hands of the jury.  I would
5     ask that you all -- and your clients realize that we
6     might have to assemble in the courtroom sooner rather
7     than later, so Britney should have the cell phone
8     numbers of the attorneys.
9            If this jury has a question in 15 minutes, we
10    have to get you back here.  And the important thing
11    about that is to answer your phone if we call it.  I
12    can't tell you how many times we say to lawyers give us
13    your phone number, but then when we call, they don't
14    answer and lawyers have to have the phone numbers of the
15    clients if they want the clients in here to hear the
16    jury question or the jury verdict.
17           So I'm not saying that you have to sit in the
18    courthouse right now, but you need to be not too far
19    from the courthouse so that we can get you back here if
20    we get a note.  Okay?  Thank you.
21           (Pause in proceeding)
22                 *  *  *  *  *  *  *  *  *  *  *
23
24
25


                 Lisa L. Tennyson, CSR, RMR, FCRR
              UNITED STATES DISTRICT COURT - NDNY

SALAMONE v DOUGLAS MARINE - 19-cv-1213

# C E R T I F I C A T I O N

I, Lisa L. Tennyson, RMR, CSR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Lisa L. Tennyson, RMR, RPR, FCRR

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY