**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KENNETH E. SALAMONE and**
**RUFSTR RACING, LLC,**

                                    **Plaintiffs,**

         **vs.**                                              **1:19-CV-01213**
                                                              **(MAD/DJS)**
**DOUGLAS MARINE**
**CORPORATION,**

                                    **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**LIPPES MATHIAS, WEXLER,**               **LEIGH A. HOFFMAN, ESQ.**
**FRIEDMAN LLP**                          **JASON A. LITTLE, ESQ.**
54 State Street, Suite 1001
Albany, New York 12207
Attorneys for Plaintiffs

**HARRIS, BEACH LAW FIRM**                **ELLIOT A. HALLAK, ESQ.**
677 Broadway, Suite 1101                  **DANIEL R. LECOURS, ESQ.**
Albany, New York 12207
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

        Plaintiffs, Kenneth E. Salamone and RUFSTR Racing, LLC, ("RUFSTR") commenced

this action on September 30, 2019, alleging causes of action including deceptive business

practices, breach of contract, unjust enrichment, fraud, conversion, promissory estoppel, and

breach of the implied covenant of good faith and fair dealing. *See* Dkt. No. 1 at ¶¶ 64–128. On

April 19, 2021, a four-day jury trial commenced and, on April 22, 2021, the jury entered a verdict

in Plaintiffs' favor.  Dkt. Nos. 64, 67.  The jury awarded Plaintiffs $131,171.00 in damages.  Dkt.

No. 67 at 2.  On May 19, 2021, Plaintiffs filed a motion to alter the judgment.  Dkt. No. 72.  On

May 21, 2021, Plaintiffs filed a motion for a bill of costs.  Dkt. No. 74.  On May 24, 2021,

Defendant and Plaintiffs filed separate notices of appeal.  Dkt. Nos. 75, 77.  Currently before the

Court are Plaintiffs' motions to alter the judgment and for a bill of costs.  Dkt. Nos. 72, 74.[1]

Based on the following, Plaintiffs' motion to alter the judgment is granted and Plaintiffs' motion

for a bill of costs is granted-in-part.

## II. BACKGROUND

Plaintiffs entered into a Contract of Sale with Defendant on or about December 31, 2015

("the Contract") for a new Skater 388 Race Boat ("the Skater") and trailer.  Dkt. No. 43 at 5.

Plaintiff Salamone testified at trial that the boat was to be delivered by August 2016 so that

Plaintiffs could race it during the 2016 season.  Tr. at 65.[2]  Plaintiffs paid an initial deposit of

$300,000 on December 30, 2015.  Dkt. No. 43 at 5.  Plaintiffs purchased additional equipment

---

[1] Despite each of the Parties filing a Notice of Appeal, the Court retains jurisdiction over
Plaintiffs' motion to alter the judgment. *Jackson v. Griffin*, No. 1:13-CV-00019, 2016 WL 70027,
*1 (W.D.N.Y. Jan. 6, 2016) (quoting *Woodard v. Hardenfelder*, 845 F. Supp. 960, 964 (E.D.N.Y.
1994)) ("In this unusual instance where the notice of appeal was filed contemporaneously with
petitioner's motion for reconsideration, the Court has jurisdiction to entertain the motion even
though a notice of appeal has been filed"); *see also Anthes v. New York Univ*., No. 17-CV-2511,
2018 WL 2383121, *1 n.1 (S.D.N.Y. Apr. 30, 2018).  Similarly, the Court has jurisdiction over
Plaintiffs' Bill of Costs notwithstanding Plaintiffs' and Defendant's pending Notices of Appeals.
*Walker v. Schult*, No. 9:11-CV-287, 2020 WL 5868164, *1 n. 1 (N.D.N.Y. Oct. 2, 2020) (citing
*Christie v. Gen. Elec. Cap. Servs., Inc.*, No. 05-CV-0379, 2010 WL 3081500, *1 (D. Conn. Aug.
5, 2010)).
[2] The Court cites to the trial transcripts as "Tr.".

necessary to complete the boat, namely, Mercury Racing Engines, transom assembly, and Super Speed Master Drives.  *See id.* at 7.  Defendant did not complete the boat by August 2016.  *Id.* at 6.

On December 31, 2016, Plaintiffs made a payment of $61,500.  Tr. at 93.  On February 28, 2017, Defendant forwarded progress photos of the Skater to Plaintiff Salamone, who responded "Omg.  Awesome!!!"  *Id*. at 26.  On February 28, 2017, Plaintiffs authorized Defendant to order two Mercury 700 SCI engines.  Dkt. No. 43 at 7.  On March 2, 2017, Plaintiffs paid $140,000 for two engines and drives.  *Id*.  On June 27, 2017, Defendant and Plaintiff Salamone spoke on the phone.  *Id*. at 8.  Defendant told Plaintiff Salamone that the Skater was not completed and Plaintiff Salamone told Defendant that he no longer wanted the Skater.  *Id*. at 116.

On June 27, 2017, Defendant wrote to Plaintiffs and requested permission to sell the Skater.  Dkt. No. 43 at 9.  Plaintiff Salamone emailed Defendant consenting to the sale.  *Id*.  Defendant placed the boat for sale on www.powerboatlistings.com.  *Id*.  The listing stated that "the boat can be purchased with or without engines."  *Id*.  Defendant initially listed the boat for the Contract price, but dropped the price five times between June 2017 and March 2018 before getting an offer.  *Id*. at 10.  Defendant eventually sold the Skater for $300,000 and the engines for $75,000.  *Id*.  Defendant remitted only $50,000 to Plaintiffs.  *Id.* at 11.

This action proceeded to trial on April 19, 2021.  Dkt. No. 61.  On April 22, 2021, the fourth day of trial, the jury entered a unanimous verdict in favor of Plaintiffs.  Dkt. No. 67.  The jury determined that, (1) Plaintiffs establish by a fair preponderance of the credible evidence that Plaintiffs substantially performed their obligations under the contract; (2) Defendant breached the contract by failing to tender the Skater within a reasonable time; (3) Plaintiffs did not waive their

right to insist on tender of the Skater prior to June 27, 2017; (4) Plaintiffs did not breach the

contract by rejecting the Skater before Defendant tendered the Skater; (5) Plaintiffs were damaged

as a result of Defendant's breach; and (6) Plaintiffs were entitled to $131,171.00 in damages.[3]

Dkt. No. 67.  That same day, the Court entered judgment in Plaintiffs' favor in the amount of

$131,171.00.  Dkt. No. 69.

## III. DISCUSSION

**A.    Plaintiffs' Motion to Strike Elliot Hallak's Declaration**

Plaintiffs have moved to strike Attorney Elliot Hallak's Declaration offered in support of

Defendant's opposition to Plaintiffs' motion to alter judgment. Dkt. No. 86 at 1.  Plaintiffs assert

that Attorney Hallak's Declaration is factually inaccurate and was used solely "as an opportunity

to make a scandalous and wholly irrelevant personal attack on Mr. Salamone." *Id*.  Plaintiffs'

motion is granted-in-part and denied-in-part.

Motions to strike "are generally considered redundant and inappropriate by this Circuit's

courts." *Garcia v. Law Offices of Howard Lee Schiff, P.C.*, No. 3:16-cv-791, 2018 WL 6590356,

*3 (D. Conn. Dec. 14, 2018) (citing *Wanamaker v. Town of Westport Bd. of Educ.*, No.

3:11CV1791, 2013 WL 3816592, *2 (D. Conn. July 22, 2013) (collecting cases on the

inappropriateness of motions to strike summary judgment exhibits)).  "Rather, '[t]he parties to an

action should have faith . . . that the court knows the difference between admissible and non-

---

[3] Plaintiffs' claims for promissory estoppel, unjust enrichment, and for breach of the covenant of good faith and fair dealings were dismissed and the jury was only charged on Plaintiffs' breach of contract claim.  Dkt. Nos. 63, 67.  The Parties stipulated that a valid contract existed between them.  Dkt. No. 67 at 1.

admissible evidence, and would not base a . . . decision simply upon the self-serving *ipse dixit* of a particular party.'" *Id.* (quoting *Carone v. Mascolo*, 573 F. Supp. 2d 575, 580 (D. Conn. 2008)).

Mr. Hallak submitted a declaration in support of Defendant's opposition to Plaintiffs' motion to alter the judgment.  Dkt. No. 86-1.  While Mr. Hallak's Declaration discusses his foundation for the facts alleged, paragraphs five through eight are wholly irrelevant and serve no purpose to further the Defendant's opposition.  *See* Dkt. No. 85-1 at ¶¶ 5-8.

Defendant's opposition concerns Plaintiffs' allegedly untimely objection to the jury verdict, which Defendant asserts should have been done after the verdict was entered but before the jury was excused.  *See* Dkt. No. 85 at 1.  Mr. Hallak's discussion of events that occurred after Court adjourned has absolutely nothing to do with Defendant's motion.  As such, the Court will grant Plaintiffs' motion and strike paragraphs five through eight.  However, the Court will exercise its discretion in not striking the entire declaration.  *See Pace v. Air & Liquid Sys. Corp*., 171 F. Supp. 3d 254, 272 (S.D.N.Y. 2016) (holding that, at summary judgment, a court will not strike an attorney affidavit where, "the Court is capable of discerning from that affirmation what statements were made on the basis of [counsel's] firsthand knowledge; what statements are summaries of evidence in the record; and what documents the Court should review in determining the accuracy of those summaries").

**B.     Plaintiffs' Motion to Alter Judgment**

*1. Standard of Review*

A motion to alter the judgment pursuant to Federal Rule of Civil Procedure 59(e) may be granted "only if the movant satisfies the heavy burden of demonstrating 'an intervening change of

controlling law, the availability of new evidence, or the need to correct a clear error or prevent

manifest injustice.'"  *Hollander v. Members of the Bd. of Regents of the Univ. of the State of N.Y.*,

524 Fed. Appx. 727, 729 (2d Cir. 2013) (quotations and other citation omitted).  A motion to alter

the judgment is an "extraordinary remed[y] to be employed sparingly in the interests of finality

and conservation of scarce judicial resources."  *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10

F. Supp. 3d 460, 475 (S.D.N.Y. 2014) (citations and quotations omitted).  The Court will not

grant a Rule 59(e) motion "unless the moving party can point to controlling decisions or data that

the court overlooked – matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court."  *Id*. (citations and quotations omitted).

### 2. Plaintiffs' Request to Increase Judgment Awarded

Plaintiffs have moved for the Court to increase the judgment entered from $131,171 to

$451,200 to rectify a clear and fundamental error of law.  Dkt. No. 72-4 at 3-8.

### a. Waiver

Defendant asserts that Plaintiffs waived their right to challenge the jury award by failing

to object to the verdict before the jury was excused.  Dkt. No. 85 at 4-5.  Plaintiffs claim that they

adequately preserved their right to challenge the verdict by requesting that a specific damages

award be included in the instructions during the charge conference.  Dkt. No. 86 at 2-3.  In the

alternative, Plaintiffs assert that the award presents a fundamental error of law.  *Id*. at 4.[4]

---

[4] Plaintiffs also argue that the verdict constitutes a "compromise verdict."  Dkt. No. 86 at 3.
However, Plaintiffs have failed to support this argument.  Plaintiffs merely assert that the
damages award was about twenty-nine percent of the damages Plaintiffs were entitled to under
Michigan law.  *Id*.  Although "[a] substantial reduction in damages, out of keeping with the
evidence and despite a finding of liability, is a common feature of compromise verdicts," by only
raising this in support of their argument, Plaintiffs have only shown—at best—"some potential

"It is well established that a party waives its objection to any inconsistency in a jury verdict if it fails to object to the verdict prior to the excusing of the jury." *Kosmynka v. Polaris Indus., Inc*., 462 F.3d 74, 83 (2d Cir. 2006).  "The requirement of a timely exception is not merely a technicality.  Its function is to give the court and the opposing party the opportunity to correct an error in the conduct of the trial." *Id*. (quoting *Barry v. Manglass*, 55 N.Y.2d 803, 805-06 (1981)) (internal quotation marks omitted).  "[T]he Second Circuit[] [provides for a] strict application of the waiver rule." *Am. Tech. Ceramics Corp. v. Presidio Components, Inc*., 490 F. Supp. 3d 593, 624 (E.D.N.Y. 2020) (citation omitted).

An objection to a jury award must have been properly preserved.  *See Barkley v. Olympia Mortg. Co*., 557 Fed. Appx. 22, 26 (2d Cir. 2014), *as amended* (Jan. 30, 2014).  Objections prior to the entry of judgment do not forestall waiver.  *Am. Tech. Ceramics Corp*., 490 F. Supp. 3d at 624.  The only excuse for waiver will be "if [the] verdict constitutes [a] 'fundamental error.'" *Id*. (quoting *Perks v. Town of Huntington*, 234 Fed. Appx. 8, 11 (2d Cir. 2007)).

"Fundamental error is more egregious than the 'plain' error that can excuse a procedural default in a . . . trial, . . . and is 'so serious and flagrant that it goes to the very integrity of the trial.'" *Jarvis v. Ford Motor Co*., 283 F.3d 33, 62 (2d Cir. 2002) (quoting *Shade v. Housing Auth. of New Haven*, 251 F.3d 307, 312 (2d Cir. 2001)).  "[A]ccurate and unobjectionable" jury instructions may present a fundamental error where they lack important rules of damage calculations resulting in the "verdict form [acting as] an invitation to the jury to come up with an erroneous damage calculation." *Rodick v. City of Schenectady*, 1 F.3d 1341, 1348 (2d Cir. 1993).

---

indicia of compromise." *Buchwald v. Renco Grp*., 539 B.R. 31, 57 (S.D.N.Y. 2015).  Such is insufficient for the Court to conclude that a jury's verdict reflects an impermissible compromise.

It is clear from the record that Plaintiffs did not object to the verdict after judgment had been entered and before the jury was excused.  *See* Tr. at 686-90.  Plaintiffs therefore waived their right to challenge the damages award.[5]  *See Am. Tech. Ceramics Corp*., 490 F. Supp. 3d at 623-24.  As such, Plaintiffs are only entitled to challenge the verdict upon a showing of fundamental error.  *See id*. at 624-25.

Plaintiffs do not take issue with the jury instructions.  *See* Dkt. No. 72-4 at 7-8.  Rather, they assert that they are entitled to all sums paid under the contract and the jury failed to award them such.  *See* Dkt. No. 72-4 at 4 (citing Mich. Comp. Laws § 440.2711).

Plaintiffs rely on *Am. Tech. Ceramics Corp. v. Presidio Components, Inc*., 490 F. Supp. 3d 593, 624 (E.D.N.Y. 2020) and *Rodick v. City of Schenectady*, 1 F.3d 1341, 1348 (2d Cir. 1993) as support for their assertion that a damages award may result in a fundamental error.  *Rodick*, however, is easily distinguishable as the Second Circuit held that it was the absence of specific instructions to the jury that resulted in a miscalculation of damages.  *Rodick*, 1 F.3d at 1348.

---

[5] The Court notes that, despite a lengthy conversation as to how the jury might calculate damages and Defense Counsel's unwillingness to stipulate to a proposed damages formula or amount, Plaintiffs' Counsel also did not object to language directing the jury how to calculate damages at the charge conference on April 22, 2021.  *See* Tr. at 613-16.  When Plaintiffs' Counsel initially declined the Court's invitation for objections and instead offered a "comment," the Court specifically stated, "Do you have any objections?  I'm asking if you have an objection.  Tell me.  Preserve the record."  *Id*. at 615.  Plaintiffs' Counsel then only objected to the instructions regarding the reasonable time standard under Michigan Law.  *Id*.  Again, the Court asked, "Any other objections?" to which Plaintiffs' Counsel responded "No, your Honor."  *Id*. at 616.  Plaintiffs' Counsel also did not object to the damages section of the proposed jury verdict form.  *Id*. at 617.  Plaintiffs' Counsel even affirmatively stated that the Court's reading of the stipulated amounts paid and remitted by both parties and including a copy of the charge with the proposed verdict form would be sufficient.  *Id*. at 618-19.  Plaintiffs' mere discussion and request for a specific damages calculation does not constitute an objection to the jury instructions or verdict form.

In *Am. Tech. Ceramics Corp.*, the plaintiffs asserted that the low jury award was evidence of a mathematical mistake which resulted in "the verdict blatantly disregard[ing] the floor for patent damages established by Congress." *Am. Tech. Ceramics Corp*., 490 F. Supp. 3d at 625. There, "[t]he court instructed the jury to 'award [the plaintiffs] a reasonable royalty for all infringing sales for which they have not been awarded lost profits damages." *Id*. at 629. However, the jury awarded the plaintiffs $58,334.75 for one patent and $608,647 for the other. *Id*. at 627. The court noted that the damages calculation showed that the jury intended to give the plaintiffs more, but instead, the jury awarded a lump sum, rather than a royalty rate, and that resulted in a significant decrease in the damages award and excluded roughly eighty percent of the infringing units that the plaintiffs were entitled royalties for. *Id*. at 625-27.

The court explained that because the jury awarded the plaintiffs the exact damages the plaintiffs requested in their summation—down to the penny—it was evident that the jury intended to award the plaintiffs a royalty rate of $0.25 per infringing unit, but mistakenly did so only for a small group of the infringed patents. *Id*. at 627-28. The court rejected the defendant's assertion that the jury award evidenced that they intended to award a reasonable royalty rate of $0.02 and $0.05 because the actual calculation resulted in royalty rates of $0.0184997226 and $0.055717806 and to assume that the jury intended these random quotients was simply illogical. *Id*.

The court held that accepting the low royalty rate as intended by the jury "demands the inchoate assumption that the jury *sua sponte* adopted different royalty rates for each patent, despite no apparent evidentiary basis or advocacy for such distinction." *Id*. at 628. Further, there was no evidence to support the incredibly low royalty rate. *Id*. at 629. The court therefore found

that the jury award represented a "fundamental error" because it "defie[d] the clear-cut commands of Congress, codified in federal statute."  *Id*. at 626.

While the present action concerned a question of state contract law, rather than a federal statute, this distinction is immaterial.  Michigan's contract law provides that where the seller fails to make delivery of the goods resulting in a material breach of the contract, the buyer may cancel the contract and recover the sums he has already paid while also pursuing other listed remedies. Mich. Comp. Laws § 440.2711.  The jury was instructed that the parties agreed that Plaintiffs paid Defendant $501,500 and Defendant remitted $50,000 to Plaintiffs.  Dkt. No. 65 at 16.  Plaintiffs therefore would have been entitled to $451,500 under Michigan contract law.  However, the jury awarded Plaintiffs $131,171, roughly a third of what they were entitled to under Michigan law.

At trial, Plaintiffs did not instruct the jury as to the specific amount of damage they were seeking.  Tr. at 644-54.  Rather, a review of the closing arguments demonstrates that Plaintiffs recounted all the sums paid and remitted to the jury and then stated "we would respectfully request the Court or the jury enter a verdict in favor of the plaintiff for the full contractual balance that is due as instructed by the Court."  *Id*. at 645-48, 653-54.  Plaintiffs, however, stopped short of telling the jury they were seeking $451,500.  Rather, Plaintiffs had also previously stated that Defendant was not entitled to the $876,500 it received for the Skater, but "$102,000 and change less . . . including the $50,000[] that they repaid to Mr. Salamone."  *Id*. at 645.  Essentially, Plaintiffs stated that Defendant was not entitled to the $152,941 it received in excess of the contract price but failed to state at closing that they were not entitled to any of the money Plaintiffs paid because of Defendant's breach.

By subtracting the additional $25,000 that Plaintiffs also claimed they were entitled for the engines, the total comes to $127,941, only $3,230 from the amount the jury actually awarded. *Id*. at 653. The last $3,230 awarded can be attributed a mathematical error and possible confusion.

During their closing, Plaintiffs stated

> the evidence also shows that plaintiff owned the engines, drives and transoms and their proceeds. There is no dispute that plaintiffs paid $140,000 for the engines and drives. There is no dispute they were sold. There's no dispute that only $50,000 of the proceeds were ultimately paid to Mr. Salamone. In addition to the -- to the $50,000, Mr. Salamone received an additional $25,000 for the engines. The evidence clearly shows that the drives and transoms were sold as part of the defendant's subsequent sale and garnered $78,230. None of that money was paid back to the plaintiff.

*Id*. at 653.

The difference between the $75,000 Plaintiffs asserted that they were entitled to for the engine and the $78,230 which Plaintiffs claimed that they were owed for the drives and transoms is $3,230. By adding $3,230 to $127,941, the Court arrives at the damages award ultimately entered by the jury, $131,171. Given the large discussion of the engines, drives, and transoms together at trial, it is likely that the jury thought the $75,000 Plaintiffs asked for in damages for the engines also included the sale of the drives and transoms, leaving only $3,230 to be added to the total of damages to make up the difference. While complicated, this is the only logical way of interpreting the jury verdict based on the evidence. *See USFL v. NFL*, 644 F. Supp. 1040, 1046 (S.D.N.Y. 1986) ("[T]he Seventh Amendment imposes upon courts a constitutional obligation to search for an interpretation of the case which reconciles the verdicts . . . and which respects the

principle that 'juries are not bound by what seems inescapable logic to judges'") (quotation omitted).

What is clear, however, is that the jury attempted to award Plaintiffs what they said that they were due.  Plaintiffs, nevertheless, did not clearly tell the jury what they were asking for in damages.  Instead, they gave the jury mixed messages by stating that Defendants were not entitled to the $876,500 it received for the Skater but "$102,000 and change less . . . including the $50,000[] that they repaid to Mr. Salamone" and by asking for "the full contractual balance that is due as instructed by the Court."  Tr. at 645, 654.

Such a result was foretold by the Court which continually told the Parties that the jury would be confused and have a difficult time calculating the damages.  *Id*. at 600.  The Court attempted to include a formula for the jury to calculate the damages but the Parties could not come to an agreement and ultimately, Plaintiffs requested that the calculation be removed from the jury instructions.  *Id*. at 605-06, 613.  Defendant would not stipulate to $451,500 in damages. *Id*. at 610.  The Court then told Plaintiffs' Counsel to discuss the amount of damages they sought in their summation, however, they left the jury to make the calculation.  *See id*. at 613, 644-54.

Unlike *Am. Tech. Ceramics Corp*., the damages calculation was an error that was largely due to Plaintiffs' strategical errors.  However, the Court cannot deny that "[t]he reasonable inference drawn here is that the jury's damages award was the product of mistake."  *Am. Tech. Ceramics Corp*., 490 F. Supp. 3d at 629.  Further, Plaintiffs were entitled to the balance paid under the contract and therefore the award "defies the clear-cut commands of" Michigan contract law.  *Id*. at 626.  The jury award therefore presents a fundamental error.

### 3. Remedy

"[T]he Seventh Amendment precludes federal courts from employing additur as a means to increase inadequate jury verdicts." *Kmec v. Port Auth. Trans Hudson Corp*., 818 F. Supp. 2d 553, 556 n.1 (E.D.N.Y. 2011) (citation omitted). "Additur is the process by which, if a trial court considers a verdict inadequate, it may condition the denial of plaintiff's motion for a new trial on defendant's consent to the entry of judgment in excess of the verdict." *Elsevier Inc. v. Grossmann*, No. 12 CIV. 5121, 2018 WL 4908105, *3 (S.D.N.Y. Oct. 9, 2018) (citing *Earl v. Bouchard Transp. Co*., 917 F.2d 1320, 1331 (2d Cir. 1990)). "Under the rule of *Dimick v. Schiedt*, 293 U.S. 474, 55 S. Ct. 296, 79 L. Ed. 603 (1935), federal courts are denied the same freedom to use additur that is enjoyed by many state court judges." *Liriano v. Hobart Corp*., 170 F.3d 264, 272 (2d Cir. 1999). "Simply put, under *Dimick*, this Court does not have the authority to increase the award of damages at Plaintiffs' request. . . . Additur is constitutionally impermissible." *Elsevier*, 2018 WL 4908105, at *4 (citations omitted).

Increasing a damages calculation, however, is not a true additur, and therefore permissible, where the district court "simply adjust[s] the jury award to account for a discrete item that manifestly should have been part of the damage calculations and as to whose amount there was no dispute." *Liriano*, 170 F.3d at 272. "When a jury has already found liability, federal courts may make such adjustments without running afoul of *Dimick*." *Id.* Thus, "[s]everal courts have recognized that *Dimick* is not applicable to cases 'where the jury has found the underlying liability and there is no genuine issue as to the correct amount of damages.'" *Elsevier*, 2018 WL 4908105,

at *4 (quoting *U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc*., 117 F.3d 1244, 1252 (11th Cir. 1997)).

Where the plaintiff is "not asking for a discrete, undisputed adjustment to the awarded damages, *Dimick* remains applicable to this case." *Id*.  Under such circumstances, the Court only has the authority to order a new trial.  *See id*.  "A new trial is appropriate under Federal Rule of Civil Procedure 59(a)" where "the court 'is convinced that the verdict was manifestly erroneous.'" *Am. Tech. Ceramics Corp*., 490 F. Supp. 3d at 630 (quoting *Manley v. AmBase Corp*., 337 F.3d 237, 246 (2d Cir. 2003)).

Plaintiffs have asked the Court to increase the judgment to $451,500.  Dkt. No. 72-4. While Defendant may dispute the damages award, there is no actual issue to be retried.  Under Michigan law, a party who rightfully rejects a good for nonconforming delivery is entitled to the full balance paid under the contract.  Mich. Comp. Laws § 440.2711; *French v. Ben's Supercenter Inc*., No. 328963, 2016 WL 6995051, *9 (Mich. Ct. App. Nov. 29, 2016) ("Under MCL 440.2711(1), plaintiff was entitled to recover 'so much of the price as has been paid.'  In this case, plaintiff had paid the full contract price of $12,000 and was therefore entitled to damages in that amount, which is the exact amount the circuit court awarded"); s*ee also Meyering v. Porsche Cars N. Am., Inc*., No. 341815, 2019 WL 488825, *4 (Mich. Ct. App. Feb. 7, 2019).  The Parties stipulated that Plaintiffs paid Defendant $501,500 and Defendant remitted $50,000 to Plaintiffs. Thus, there is no question that Plaintiffs were entitled to $451,500 in damages.[6]

---

[6] At the pre-charge conference, Defendant conceded that Plaintiffs' damages were $451,000 but asserted that said amount would be subject to mitigation.  Tr. at 600-01.  The Court declined to charge the jury with mitigation because it had dismissed Defendant's affirmative defenses and

Plaintiffs have asked for an increase of $320,329.  In *Liriano*, the Second Circuit affirmed a discrete addition to the damages calculation of $21,252.34 (representing medical expenses whose amount and nature were not in dispute), thereby awarding $1,352,500 in total damages. *Liriano*, 170 F.3d at 272-73.  In *Elsevier*, the plaintiffs requested $31,345 in damages at trial but the jury awarded $11,108.  *Elsevier*, 2018 WL 4908105, at *1.  The plaintiffs moved for an adjusted verdict, or a new trial, and requested "the full amount of damages, trebled in accordance with Section 1964(e) of RICO, for a total of $94,035, plus pre-judgment interest."  *Id*.  However, the court held that "[b]ecause Plaintiffs are not asking for a discrete, undisputed adjustment to the awarded damages, *Dimick* remain[ed] applicable to" the plaintiffs' case.  *Id*. at *4.

In *Elsevier*, not only did the plaintiffs ask the court to triple the damages award, the award the plaintiffs sought was actually almost nine times more the amount the jury awarded them.  *See id*. at *1, 4.  Further, the amount of damages was contested.  *Id*. at *4.  Unlike *Elsevier*, awarding a new trial here would be a mere formality simply to require the jury to subtract $50,000 from $501,500 since Plaintiffs' damages are prescribed by law.  As a result, adjusting the verdict would not be a true additur and a new trial is not warranted.  *See U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc*., 117 F.3d 1244, 1253 (11th Cir. 1997) (quoting *Taylor v. Green*, 868 F.2d 162, 165 (5th Cir. 1989)).[7]

Therefore, as Plaintiffs paid Defendant $501,500 and Defendants remitted $50,000, Plaintiffs' motion to adjust the verdict to $451,500 is granted to correct the fundamental error.

---

noted that Defendant had made no attempt to prove mitigation and presented no evidence of any damages Plaintiffs could have avoided through mitigation.  *Id*. at 601-02.

[7] The Court notes that Plaintiffs have not requested a new trial.  *See* Dkt. No. 72-4.

This amount is consistent with Mich. Comp. Laws § 440.2711.  *See French*, 2016 WL 6995051, at *9 ("Under MCL 440.2711(1), plaintiff was entitled to recover 'so much of the price as has been paid.'  In this case, plaintiff had paid the full contract price of $12,000 and was therefore entitled to damages in that amount, which is the exact amount the circuit court awarded");

### 4. Plaintiffs' Motion for Pre-Judgment and Post-Judgment Interest

Plaintiffs have also requested that the Court include any pre-judgment and post-judgment interest that Plaintiffs are entitled to.  Dkt. No. 72-4 at 9-10.  "[A] Rule 59(e) motion to alter or amend a judgment is the proper basis for bringing a request for prejudgment interest."  *Foresco Co. v. Oh*, 337 F. Supp. 3d 304, 306 (S.D.N.Y. 2018) (citing *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175-76 (1989)).  "[I]t is well settled that state law applies to the question of whether to award prejudgment interest in a diversity action in federal court."  *Id*. (citations omitted).

Defendant objects to Plaintiffs' application for pre-judgment interest because Plaintiffs have failed to put forth any argument demonstrating that such an award is appropriate.  Dkt. No. 85 at 12-13.  Defendant makes no objection to applying post-judgment interest.  *See id*.  In their reply, Plaintiffs still failed to support their motion.  *See* Dkt. No. 86 at 7.  Plaintiffs failed to cite any Michigan case law on this issue.  *See id*.; Dkt. No. 86 at 7.

Plaintiffs have not established that Michigan law provides for pre-judgment interest, let alone what amount that would be.  "[I]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'"  *Borowski v. Mordino*, No. 16-CV-00999, 2020 WL 6083425, *1 (W.D.N.Y. Oct. 15, 2020) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

Plaintiffs' motion for pre-judgment interest is denied.  *See TNR Logistics Co. v. Status Logistics Corp.*, No. 17CV4636, 2018 WL 4062633, *5 (E.D.N.Y. Aug. 27, 2018) (holding that the plaintiff failed to establish it was entitled to prejudgment interest where the plaintiff failed to present the court with the relevant authority demonstrating that pre-judgment interest was available under the governing slaw); *Plains Mktg., L.P. v. Doniphan Energy, L.L.C.*, No. 10-CV-2032, 2012 WL 1077773, *2 (E.D.N.Y. Mar. 30, 2012) ("Because plaintiff has failed to meet its burden of establishing its entitlement to the prejudgment interest rate sought, the court declines to award prejudgment interest").  However, Plaintiffs' request for post-judgment interest is granted and "shall accrue on the full amount of the judgment in accordance with 28 U.S.C. § 1961(a) because '[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.'"  *Chongqing Loncin Engine Parts Co., et al., v. New Monarch Machine Tool, Inc*., No. 5:21-CV-84, 2021 WL 3360538, *6 (N.D.N.Y. Aug. 3, 2021) (quoting *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996)) (alteration in original).

**C.     Plaintiffs' Motion for a Bill of Costs**

Plaintiffs filed a motion for bill of costs on May 21, 2021, in the amount of $6,490.60.  *See* Dkt. No. 74.  Defendant filed an affidavit in opposition to Plaintiffs' bill of costs on June 6, 2021.  Dkt. No. 85.  Based on the following, Plaintiffs' bill of costs is granted for a total of $3,970.60.

Federal Rule of Civil Procedure 54(d)(1) provides that costs—other than attorney's fees—should be to the prevailing party.  The costs that may be awarded to a prevailing party are listed in

28 U.S.C. § 1920. *See Gallagher v. IBEW Local Union No. 43*, No. 5:00-CV-1161, 2008 WL

5191691, *1 (N.D.N.Y. Dec. 10, 2008).  Section 1920 provides as follows:

> A judge or clerk of any court of the United States may tax as costs
> the following:
>
> > (1) Fees of the clerk and marshal;
> >
> > (2) Fees for printed or electronically recorded transcripts
> > necessarily obtained for use in the case;
> >
> > (3) Fees and disbursements for printing and witnesses;
> >
> > (4) Fees for exemplification and the costs of making copies
> > of any materials where the copies are necessarily obtained
> > for use in the case;
> >
> > (5) Docket fees under section 1923 of this title;
> >
> > (6) Compensation of court appointed experts, compensation
> > of interpreters, and salaries, fees, expenses, and costs of
> > special interpretation services under section 1928 of this
> > title.

Awarding costs to the prevailing party is the rule, not the exception, in civil litigation. *See*

*Whitfield v. Scully*, 241 F.3d 264, 270 (2d Cir. 2001) (citing Fed. R. Civ. P. 54(d); *Mercy v.*

*County of Suffolk*, 748 F.2d 52, 54 (2d Cir. 1984)), *abrogated on other grounds Bruce v. Samuels*,

136 S. Ct. 627 (2016).  Accordingly, "the losing party has the burden to show that costs should

not be imposed; for example, costs may be denied because of misconduct by the prevailing party,

the public importance of the case, the difficulty of the issues, or the losing party's limited financial

resources." *Id*.

### 1. Plaintiffs' Bill of Costs

Plaintiffs' bill of costs seeks a total of $6,490.60, consisting of the following itemized costs:

| Cost/ Fees | Description | Amount |
|---|---|---|
| Fees of Clerk | Filing Complaint | $400.00 |
| Service of summons | | $95.00 |
| Deposition Transcript | Anthony Cutsuries | $1,314.20 |
| Deposition Transcript | Peter Hledin June 23, 2020 | $1,040.90 |
| Deposition Transcript | Peter Hledin Aug. 28, 2020 | $655.90 |
| Trial Transcript | Day 4 | $357.70 |
| Trial Transcript | Days 1-3 | $2,520.00 |
| Photocopies | | $81.90 |
| Docket fees | on trial | $20 |
| Docket fees | on motion for judgment | $5 |

### 2. Defendant's Objections

Defendant objects to Plaintiffs' request that the Court tax as costs Plaintiffs' costs incurred for the depositions of Anthony Cutsuries and Peter Hledin and obtaining trial transcripts.  Dkt. No. 83.  Defendant claims that Plaintiffs are not entitled to costs related to their motion for summary judgment as it was unsuccessful; depositions used for discovery purposes are not taxable; Plaintiffs can only recover for portions of deposition transcripts actually used; and depositions not used at all must be excluded.  *Id*.

Defendant's objections to the Court taxing as costs those costs Plaintiffs incurred for the depositions of Anthony Cutsuries and Peter Hledin is baseless.  The N.D.N.Y. Guidelines for Bills of Costs (hereinafter "Guidelines") specifically provides that the "Transcript of deposition of person who testified at trial" is taxable.  Guidelines, Part II, D.1.d.;[8] *see also Yunus v. Jones*, No. 9:16CV1282, 2020 WL 3026238, *3 (N.D.N.Y. June 5, 2020) ("Furthermore, because Plaintiff testified at trial, the deposition transcript was necessary in order to cross-examine him (or to be prepared to do so)").  Plaintiffs needed only provide an invoice explaining the transcript prepared, the number of transcript pages, the per-page rate, and the total cost.  Guidelines, Part II, D.3.

Further, the Court rejects Defendant's assertion that these transcripts were not used or used in their entirety and as such the Court should reduce Plaintiffs' costs accordingly.  Not only are these transcripts categorically taxable, but Plaintiffs used these transcripts when they submitted them to the Court at both summary judgment and during trial.  *See* Dkt. Nos. 31-56, 31-57; *see also Goldstein v. Robert Half Int'l*, No. 04 CIV. 08238, 2010 WL 11651387, *3 (S.D.N.Y. June 29, 2010) (finding that a deposition is used when it is submitted to the court at summary judgment and the court was not required to cite to it to demonstrate use).  Anthony Cutsuries and Peter Hledin testified at trial and therefore the expenses for the deposition transcript are recoverable.[9] *Yunus*, 2020 WL 3026238, at *3.  Plaintiffs, however, have not demonstrated that all the trial transcripts were necessarily obtained for use in the case.

---

[8] A copy of the N.D.N.Y. Guidelines can be found at
https://www.nynd.uscourts.gov/sites/nynd/files/Bill_of_Costs_guidelines.pdf.
[9] Defendant does not object to the rate charged for the transcripts.  *See* Dkt. No. 83.

Plaintiffs do not attach invoices but emails regarding the payment for the trial transcripts.[10]  *See* Dkt. No. 74-2 at 6-7.  The emails demonstrate that Plaintiffs received the transcripts in May, 2021.  *Id.*  As trial concluded on April 22, 2021, the transcripts were not used at trial.  *See* Dkt. No. 64.  Plaintiffs assert that there is no requirement that they show the transcripts were necessary, only that they were used in connection with a motion.  Dkt. No. 84 at ¶¶ 6-7.  However, Plaintiffs are incorrect.  Trial transcripts are only taxed where their use was a "necessity—beyond the mere convenience of counsel."  *Perks v. Town of Huntington*, 331 Fed. Appx. 769, 770 (2d Cir. 2009) (quoting *Galella v. Onassis*, 487 F.2d 986, 999 (2d Cir. 1973)).  However, where "Plaintiff's attorneys have used the trial transcripts to draft their post-trial brief . . . , they were necessary to their trying the case."  *Romaine v. Rawson*, No. 9:99-CV-603, 2004 WL 1013316, *6 (N.D.N.Y. May 6, 2004).

Plaintiffs have used the trial transcript from April 22, 2021, to support their motion alter the judgment.  *See* Dkt. Nos. 72-4; 72-3.  However, as Plaintiffs have only used one transcript, they have failed to demonstrate necessity of the other trial transcripts.  Such transcripts were not submitted to the Court and were not relied on in Plaintiffs' motion to alter the verdict.  *See* Dkt. No. 72-3.  Where the moving party has failed to show necessity, the court does not err by rejecting the parties' request to tax the cost of trial transcripts.  *Sacco v. Daimler Chrysler Corp*., No. 05-CV-1435, 2008 WL 2858652, *1 (N.D.N.Y. July 22, 2008).

---

[10] Plaintiffs note that they attached the emails as they never received invoices.  Dkt. No. 74-1 at 3 n.1.  Defendants have not made any objection to use of the emails to demonstrate Plaintiffs' costs. *See* Dkt. No. 83.

The trial transcript from April 22, 2021 is 98 pages long.  Plaintiffs have asked for a rate of $3.65 per page.  Dkt. No. 74-1 at ¶ 8 n.2.  Therefore, the Court will award Plaintiffs $357.70 for costs incurred obtaining the trial transcript for April 22, 2021.  Defendant does not object to the remaining costs, therefore the Court grants Plaintiffs' motion to tax costs in the amount of $3,970.60 as itemized below:

| Cost/ Fees | Description | Amount |
|---|---|---|
| **Fees of Clerk** | Filing Complaint | $400.00 |
| **Service of summons** | | $95.00 |
| **Deposition Transcript** | Anthony Cutsuries | $1,314.20 |
| **Deposition Transcript** | Peter Hledin June 23, 2020 | $1,040.90 |
| **Deposition Transcript** | Peter Hledin Aug. 28, 2020 | $655.90 |
| **Trial Transcript** | April 22, 2021 | $357.70 |
| **Photocopies** | | $81.90 |
| **Docket fees** | For trial | $20.00 |
| **Docket fees** | For motion for judgment | $5.00 |

**Total**     **$3,970.60**

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Plaintiffs' motion to alter or amend judgment (Dkt. No. 72) is **GRANTED;** and the Court further

**ORDERS** that Plaintiffs' motion for a bill of costs (Dkt. No. 74) is **GRANTED-in-part for a total of $3,970.60;** and the Court further

ORDERS that Plaintiffs' motion to strike (Dkt. No. 86) is **GRANTED-in-part and DENIED-in-part;** and the Court further

ORDERS that the Clerk of the Court shall enter an amended judgment in the amount of $451,500 with post judgment interest consistent with Federal Rule of Civil Procedure 54(d)(1); and the Court further

ORDERS that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 23, 2021
      Albany, New York

Mae A. D'Agostino
U.S. District Judge